**Frank GENUSA et al., Plaintiff-Appellants, Cross-Appellees,**

v.

**CITY OF PEORIA et al., Defendant-Appellees, Cross-Appellants.**

**Nos. 79–1716, 79–1717.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1980.

Decided April 25, 1980.

Adam Bourgeois, Chicago, Ill., for plaintiffs-appellants, cross-appellees.

Eric Margolis, Legal Dept., City of Peoria, Peoria, Ill., for defendants-appellees, cross-appellants.

Before TONE, WOOD and CUDAHY, Circuit Judges.

TONE, Circuit Judge.

The question in this case is whether a recently enacted "adult use" ordinance of the City of Peoria, Illinois,[1] places restrictions on the operation of adult bookstores that cannot be squared with the First Amendment as made applicable to the states by the Fourteenth Amendment. The Peoria ordinance, which is modeled in part on an ordinance of the City of Detroit that was held constitutional in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), places numer-

---

1. Peoria, Illinois Ord. No. 10318 [hereinafter cited as Peoria Ord.]. The ordinance was adopted on March 22, 1978, and was amended to its present form on January 16, 1979. The entire ordinance and the license and permit application forms Peoria has devised to implement it are reproduced as an appendix to the opinion of the district court. *See* 475 F.Supp. 1199, 1209–21.

ous zoning, licensing, and employee permit restrictions on the operation of adult bookstores and other adult entertainment establishments in Peoria.[2] Plaintiffs, who are owners of and employees in what are conceded to be "adult bookstores" within the meaning of the ordinance, challenge the ordinance only insofar as it seeks to regulate the operation of adult bookstores.[3] Accordingly, no issue is presented concerning the constitutionality of the ordinance as it applies to other types of adult use establishments.

## I. *Procedural History*

Shortly after the filing of plaintiffs' verified complaint attacking the constitutionality of the ordinance, the court issued a temporary restraining order against enforcement of the ordinance and set plaintiffs' motion for preliminary injunction for early hearing. Both sides filed briefs and argued orally at the hearing, but no evidence was offered on either side. During the hearing the parties agreed that no facts were in dispute. The court therefore proceeded, without objection from the parties, to decide the case on the merits.

In their verified complaint, plaintiffs allege that the purpose of the ordinance was to eliminate the stores of the owner plaintiffs and other adult bookstores in Peoria because of the content of the books they sold, and that the ordinance "is having the desired effect." Given that the books in question have never been held obscene and are therefore entitled to First Amendment protection, admitting these allegations would amount to confessing judgment. Yet the defendants filed no answer and thus left the allegations technically admitted. The allegations have not been treated by the parties as admitted, however, either

in the proceedings before the district court or in the briefs filed before us. The district court did not treat them as admitted. Under these circumstances, neither do we.

The court entered an order declaring portions of the ordinance dealing with adult bookstore licensing and employee permit requirements unconstitutional but upholding the validity of the zoning provisions in the ordinance. 475 F.Supp. 1199 (C.D.Ill.1979). A final judgment was entered enjoining enforcement of the offending parts of the ordinance. Plaintiffs have appealed from the judgment insofar as it upholds portions of the ordinance; defendants have cross-appealed from the judgment insofar as it invalidates portions of the ordinance.

## II. *Facts*

The facts of record are as follows: There are at least three adult bookstores in Peoria, all of which were in operation at their present locations at the time the ordinance was adopted.[4] One is across the street from the federal courthouse. Two are on the other side of town. There is no evidence as to the proximity of these bookstores to one another, whether Peoria contains other adult use entertainment establishments, or, if so, where they are. Some plaintiffs have sought and obtained either licenses or permits under the ordinance, but at least one owner-plaintiff has not sought a license, and at least several employee-plaintiffs have not sought employee permits. Finally, defense counsel conceded in oral argument before this court that Peoria does not require that bookstores other than adult bookstores be licensed.

The ordinance contains the following preamble:

> WHEREAS, adult book stores, cabarets, body shops, massage parlors and

2. In addition to adult bookstores, the ordinance regulates adult motion picture theaters, adult mini motion picture theaters, adult entertainment cabarets, body shops or model studios, and massage establishments. The ordinance subjects all of these "adult uses" to the same set of restrictions.

3. Plaintiffs' complaint sought a declaration that the ordinance is unconstitutional on its face and an injunction against its enforcement. Counsel for plaintiffs informed us in oral argu-

ment, however, that the only relief sought by plaintiffs involves the constitutionality of the ordinance as applied to adult bookstores. We accept this narrowing of plaintiffs' pleaded request for relief.

4. Plaintiffs' counsel has informed us that there are four adult bookstores in Peoria. Defense counsel has told us that there were four, but that one has recently gone out of business.

adult motion picture theaters, because of their very nature, are recognized as having serious, objectional [sic], operational characteristics, particularly when several of them are concentrated in certain areas thereby having a deleterious effect upon adjacent areas; and

WHEREAS, it is necessary that these businesses be regulated in such a manner as to prevent this concentration and the continued erosion of the character of the affected neighborhoods; and

WHEREAS, the City of Peoria desires to protect the youth of its community from objectional [sic] operational characteristics of such businesses by restricting their close proximity to places of worship, schools and residential areas;

NOW, THEREFORE, BE IT ORDAINED . . .[5]

### III. *Standing to Sue*

Because plaintiffs attack a number of diverse provisions of the ordinance,[6] their standing to sue must be evaluated with respect to each specific challenge. Accordingly, standing is addressed in the discussion of each challenged provision.

### IV. *Definitional Provisions*

■ Plaintiffs first attack the definition of "adult bookstore" in the ordinance on the ground that it is vague and overbroad.[7] Under *Young v. American Mini Theatres, Inc., supra*, 427 U.S. at 58–61, 96 S.Ct. at 2446, 2447, plaintiffs have no standing to litigate this issue.

As we earlier noted, plaintiffs acknowledged that their bookstores are within the scope of the definition of "adult bookstore" found in the ordinance. The definition is thus sufficiently precise to leave plaintiffs in no doubt about whether their actions are covered. Because of the importance of First Amendment rights, however, litigants seeking to assert such rights are sometimes granted standing to challenge vague or overbroad laws even though they themselves are not in doubt as to whether their

---

5. Peoria Ord., *supra* note 1, Preamble. The preamble adopts virtually verbatim some of the more general language from the preamble to the Detroit ordinance that was at issue in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). The Peoria preamble is different from the one involved in *Young*, however, in that it recites a state interest in protecting minors from the objectionable characteristics of adult uses. *See id.* at 54 n.6, 96 S.Ct. at 2444 n.6.

6. The Peoria Ordinance contains a severability clause, § 4–61. Respect for the clause makes necessary a particularized consideration of each individual provision at issue.

7. Peoria Ord., *supra* note 1, § 4–43A reads,
 *Adult Book Stores*: An establishment having as a substantial portion of its stock in trade, books, magazines, films for sale or viewing on premises by use of motion picture devices or any other coin-operated means, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to "Specified Sexual Activities," or "Specified Anatomical Areas" or an establishment with a segment or section devoted to the sale or display of such material.
 The terms "specified sexual activities" and "specified anatomical areas" are defined in § 4–43 as follows:

 G. *Specified Sexual Activities*: are any of the following conditions:
 1. Human genitals in a state of sexual stimulation or arousal;
 2. Acts or representations of acts of human masturbation, sexual intercourse or sodomy, bestiality, oral copulation or flagellation;
 3. Fondling or erotic touching of human genitals, pubic region, buttock or female breast;
 4. Excretory functions as part of or in connection with any activities set forth in (1) through (3) above.
 H. *Specified Anatomical Areas* are any of the following conditions:
 1. Less than completely and opaquely covered: (a) human genitals, pubic region, or pubic hair (b) buttock and (c) female breast below a point immediately above the top of the areola; and
 2. Human male genitals in a discernibly turgid state, even if completely opaquely covered.
 *Id.* § 4–43G & H. The definitions are virtually identical to definitions in the Detroit ordinance that was at issue in *Young*, except for subsection G.4, which does not appear in the Detroit ordinance. *See* 427 U.S. at 53 nn.4 & 5, 96 S.Ct. at 2444 nn. 4 & 5.

conduct is covered and are not engaged in conduct that could not properly be made the object of the restriction the law seeks to impose.[8] This doctrine of standing to assert vicariously the First Amendment interests of others is not, however, without limits. As in every case, plaintiffs must have a direct stake in the outcome in order to satisfy Article III case or controversy requirements. In addition, *Young* makes plain that the doctrine of vicarious standing will not apply if the provision challenged is "readily subject to a narrowing construction by the state courts" and is not so vague or overbroad that there exists a "real and substantial" possibility that its "very existence . . . may cause persons not before the Court to refrain from engaging in constitutionally protected speech or expression." *Young v. American Mini Theatres, Inc.*, supra, 427 U.S. at 60–61, 96 S.Ct. at 2447; *see Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975); *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). We believe the definition in question is "readily subject to a narrowing construction." *See Young v. American Mini Theatres, Inc.*, supra, 427 U.S. at 61, 96 S.Ct. at 2447.[9] The issue of whether the definition may have a "real and substantial" impact on the exercise of protected rights of expression was also settled by *Young*, in which similar definitions were held to pose no such threat.[10] Under *Young*, plaintiffs lack standing to attack the definition on either vagueness or overbreadth grounds.

## V. Zoning Provisions

Plaintiffs next attack the zoning provisions in the ordinance on the ground that they constitute an invalid prior restraint on speech. The provisions in question require that an adult use, including an adult bookstore, shall not be located within 500 feet of an existing adult use; within 700 feet of any district zoned for low, medium, or high density residential use; within 500 feet of any pre-existing school or place of worship; or in a building containing an establishment that in any manner sells or dispenses alcoholic beverages.[11] Distances are to be measured,

---

8. *See, e. g., Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 58–61, 96 S.Ct. 2440, 2446–2447, 49 L.Ed.2d 310 (1976); *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 114–15, 92 S.Ct. 2294, 2298–99, 2302, 33 L.Ed.2d 222 (1972); *Keyishian v. Board of Regents*, 385 U.S. 589, 603–04, 608–10, 87 S.Ct. 675, 683–84, 686–87, 17 L.Ed.2d 629 (1967); *NAACP v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). *See also Gooding v. Wilson*, 405 U.S. 518, 521, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972). *See generally* Amsterdam, *The Void for Vagueness Doctrine in the Supreme Court*, 109 U.Pa.L.Rev. 67 (1960); Note, *The First Amendment Overbreadth Doctrine*, 83 Harv.L.Rev. 844 (1970).

9. The city has informed us that it presently interprets the provisions of the definition that refer to "a substantial portion" of a bookstore's stock in trade and to "a segment or section devoted to" the type of materials defined in the ordinance as meaning that a bookstore is covered only if more than half its stock consists of adult materials. The city has not told us how it determines whether materials are "characterized" by an "emphasis" on the specified acts and anatomical areas, but *Young* held that language to be subject to narrowing in the context of adult films, and we believe that holding applies also to adult books.

10. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 53 nn. 4 & 5, 96 S.Ct. 2440, 2444 nn. 4 & 5, 49 L.Ed.2d 310; *id.* at 58–61, 96 S.Ct. at 2446–2447. It is true that *Young* ruled on the overbreadth of the adult movie definition and not the adult bookstore definition. The movie theater definition, however, contained the "characterized" by an "emphasis" language and incorporated the same definitions of specified sexual activities and specified anatomical areas that applied to bookstores, which definitions, as noted above, are substantially the same as those in the Peoria ordinance. Moreover, the movie theater definition addressed in *Young* encompassed all theaters "used for presenting" the defined materials. That definition was, we believe, at least as broad in this respect as is the adult bookstore definition, which is limited to bookstores with a "substantial portion" or a "segment or section" of their stock in trade devoted to defined materials. We therefore consider *Young* controlling.

11. Peoria Ord., *supra* note 1, § 4–45. As the district court noted, the Twenty-First Amendment may be relevant to the provision dealing with buildings in which alcohol is dispensed. *See California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). We do not understand plaintiffs to contest the validity of this provision.

in a straight line, without regard to intervening structures or objects, from the property line of the adult use, to the nearest property line of another adult use, school, place of worship or district zoned for residential use.[12]

■ We first address the issue of plaintiffs' standing to attack these provisions. As an initial matter, plaintiffs are not subject to these restrictions, because, under the grandfather clause of the ordinance,[13] the bookstores which they own or in which they are employed may continue in their current locations so long as they are not converted into some other type of adult use. Plaintiff owners do not allege that they desire to move the location of their bookstores, to open new bookstores, or to convert their bookstores into some other form of adult use. The inapplicability of the zoning provisions to plaintiffs' bookstores does not, however, deprive plaintiffs of any personal stake in the outcome of a challenge to their validity. As is discussed in Part VI–A of this opinion, *infra*, plaintiff owners also contest, and have standing to contest, the validity of the ordinance's licensing requirement.[14] As we conclude in Part VI–A, the validity of the license requirement turns on the validity of the zoning provisions. If the licensing requirement is valid, the owners are required to obtain a license, for which they must pay a $100 license fee. They therefore have the requisite personal stake in the outcome of a challenge to the zoning provisions to meet standing requirements under Article III.

■ Although plaintiffs urge that the zoning provisions are unconstitutional as a whole, we need not reach the validity of all of them in order to decide whether the licensing requirement has been imposed in accordance with a valid zoning scheme. The portion of the zoning provisions that requires that adult uses be separated from one another by a distance of at least 500 feet is constitutional under the reasoning advanced in *Young v. American Mini Theatres, Inc., supra.*[15] Even though here, unlike in *Young,*[16] the city has not demonstrated a past history of congregated adult uses causing neighborhood deterioration, we agree with the district court that a city need not await deterioration in order to act. A legislative body is entitled to rely on the experience and findings of other legislative bodies as a basis for action. There is no reason to believe that the effect of congregated adult uses in Peoria is likely to be different than the effect of such congregations in Detroit. The Peoria City Council found, in the preamble to the ordinance, that congregated adult uses cause "deleterious effects," and the Supreme Court in *Young* found that such effects were sufficient to justify a zoning requirement that adult uses not be located in close proximity to one another.[17] That ruling is controlling here.

■ The validity of the requirement that adult uses be separated by 500 feet is enough to support the licensing provisions sustained in Part VI–A, *infra*. It is thus unnecessary, for purposes of considering the validity of the licensing provisions, to decide whether other zoning restrictions are valid. We hold that plaintiffs lack standing to challenge these other restrictions. The part of the district court's judgment that sustains them is vacated, and plaintiffs' claim

---

12. Peoria Ord., *supra* note 1, § 4–46.

13. *Id.* § 4–45(D).

14. Unlike the zoning provisions, the license requirement applies to adult uses in existence when the ordinance was passed as well as to new adult uses. *Id.* § 4–52.

15. 427 U.S. at 63–73, 96 S.Ct. at 2448–2453 (Stevens, J., joined by Burger, C. J., White &

Rehnquist, JJ.); *id.* at 73–84 (Powell, J., concurring).

16. *See id.* at 54–55 & nn. 6 & 8, 96 S.Ct. 2444–2445 & nn. 6 & 8 (opinion of the Court).

17. *See id.; id.* at 71 & n.34, 96 S.Ct. 2452 & n.34 (plurality opinion); *id.* at 74–75, 80–81 & n. 4, 96 S.Ct. 2454, 2457 & n. 4 (Powell, J., concurring).

with respect to these restrictions is dismissed.[18]

## VI. *Licensing Provisions*

### A. *The Simple License Requirement*

■ The Peoria ordinance makes it unlawful for anyone to operate an adult bookstore in Peoria without first obtaining a license.[19] To obtain a license, the applicant must pay a $100 fee and satisfy many other conditions as well. Plaintiffs contend, first, that the requirement of a license is in itself an invalid prior restraint under the First Amendment, and, second, that various conditions imposed are invalid. Because the license requirement is applicable to the adult bookstores of the owner plaintiffs, standing requirements are satisfied.

■ We have held in Part V of this opinion, *supra*, that the zoning provisions that relate to separation of adult uses are constitutional. Therefore, under *Young v. American Mini Theatres, Inc., supra*, 427 U.S. at

62–63, 96 S.Ct. at 2448, the requirement of a license is also constitutional. It is rationally related to the goal of "inverse," or scatter zoning of adult uses; it provides both a method for authorities to enforce scatter zoning and a means of assuring those who seek to open a new adult use of the legality of the proposed site. The procedural delay that the licensing provision occasions is limited by the terms of the ordinance and is not argued to be excessive in relation to its end.[20]

Plaintiffs argue, however, that *Young* dealt only with a requirement of a license for adult movie theaters; they contend that, while a license may sometimes properly be required of a movie theater, bookstores may never be subjected to such a requirement. Some support can be found in opinions of the Supreme Court for the proposition that, under the First Amendment, state regulation of movie theaters may go further than state regulation of bookstores.[21] It may be, thus, that the li-

18. The effect of our ruling is to deny plaintiffs, as a discretionary matter, standing to litigate the constitutionality of the zoning provisions other than those relating to the separation of adult uses from one another. We consider this denial appropriate for two reasons. First, plaintiffs have not demonstrated that they will be directly affected by the zoning provisions themselves, and we think the challenging of these provisions is best left to a party who would be directly affected and would therefore have a greater incentive to litigate the issue. Without in any way impugning the good faith of plaintiffs or of their counsel, we note that, by reason of the grandfather clause, the zoning provisions, if valid, could give plaintiff owners a competitive advantage over prospective adult bookstore owners. Second, to allow plaintiffs standing to assert the interests of prospective adult bookstore operators or other affected persons who are not now before the court would be warranted only if the zoning provisions presented a real and substantial threat to protected First Amendment freedoms. The record is barren, however, of any facts indicating whether or not the distance requirements in the zoning provisions might, when taken as a whole, have the effect of precluding a new adult bookstore from opening in Peoria in any viable location. Serious constitutional questions would be posed if the effect of the provisions were to preclude new adult bookstores. *Young v. American Mini Theatres, Inc.*, 427 U.S. at 71 n.35, 96 S.Ct. at 2453 n.35 (plurality

opinion); *id.* at 84 (Powell, J., concurring); *see United States v. O'Brien*, 391 U.S. 367, 388–89, 88 S.Ct. 1673, 1685, 20 L.Ed.2d 672 (1968) (Harlan, J., concurring). Preclusive effect is not established by this record, however, and in the absence of such an effect plaintiffs should not be accorded standing to contest the facial validity of the zoning provisions as a whole.

19. Peoria Ord., *supra* note 1, § 4–47. The requirement of a license applies to plaintiff owners. *Id.* § 4–52.

20. The ordinance provides for a maximum period of seventy-five days before a license applicant is informed of a final decision on his license application. It further provides that the applicant be notified of the reasons for a delay that extends beyond forty-five days. Peoria Ord., *supra* note 1, § 4–47; *see* note 26 *infra*. These time periods were presumably fixed to allow time for the inspection and investigation procedures we hold impermissible in Parts VI–C and VI–D of this opinion, *infra*. Plaintiffs have not directly challenged these time periods on the ground that they are excessive, and we see no need to rule on that issue in this case.

21. *E. g., Times Film Corp. v. City of Chicago*, 365 U.S. 43, 49–50, 81 S.Ct. 391, 394–395, 5 L.Ed.2d 403 (1961); *see also Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 n.10, 83 S.Ct. 631, 639 n.10, 9 L.Ed.2d 584 (1963); *id.* at 79

censing of a bookstore is inherently more suspect than is the licensing of a movie theater. The reasoning that underlies *Young,* however, is that cities may use zoning to break up congregations of adult uses that would otherwise cause urban blight.[22] *Young* acknowledges that the zoning power cannot be used as a tool to suppress or restrict speech,[23] but nothing in the opinions in *Young* indicates that the zoning of bookstores should be viewed as more restrictive than the zoning of movie theaters. Moreover, nothing in the record of this case or in common experience would warrant this court in concluding that adult bookstores contribute less than other forms of adult use to the injurious neighborhood effects that may stem from a congregation of adult uses. The decline in property values and the general deterioration of a neighborhood that flows from such a congregation would seem to follow equally from congregations that contain adult bookstores, adult movie theaters, or other adult uses that bear little or no relationship to First Amendment concerns. Given this, and given also the fact that the distinction between print and film media is, for First Amendment purposes, not large,[24] we think bookstores are subject to the same rule that governs movie theaters as to the issue in dispute. We therefore find that the license requirement is not rendered unconstitutional by its coverage of bookstores as well as movie theaters and other adult uses. Accordingly, we affirm the judgment of the district court that the requirement that an adult bookstore obtain a license is valid.

## B. The $100 License Fee Requirement

The Peoria ordinance requires that an applicant for an adult bookstore license pay a $100 fee.[25] If, as we have held, the license requirement is valid, a fee in some amount is permissible to cover the cost of regulation. Plaintiffs have not argued that, assuming the validity of the licensing requirement, the fee is excessive. Accordingly, we do not rule on whether it is.

## C. Inspection Requirements

▮ The Peoria ordinance requires that before an adult bookstore license may issue, the Fire, City Planning, and Inspections Departments must inspect the proposed premises to ascertain whether they are in compliance with all applicable provisions of the city code of Peoria.[26] The owner plain-

---

n.4, 83 S.Ct. 644 n.4 (Harlan, J., dissenting); *cf. Kingsley Internat. Pictures Corp. v. Regents,* 360 U.S. 684, 689–90, 79 S.Ct. 1362, 1365–66, 3 L.Ed.2d 1512 (1959). *But see* authorities cited in note 24 *infra.*

**22.** *Young v. American Mini Theatres, Inc.,* 427 U.S. at 54–55 & nn. 6 & 8, 96 S.Ct. at 2444–2445 & nn.6 & 8 (opinion of the Court); *id.* at 71 & n.34, 96 S.Ct. at 2452 & n.34 (plurality opinion); *id.* at 74–75, 80–81 & n.4, 96 S.Ct. at 2454, 2457–2458 & n.4 (Powell, J., concurring); *see id.* at 87, 96 S.Ct. at 2460 (Stewart, J., joined by Brennan, Marshall & Blackmun, JJ., dissenting).

**23.** 427 U.S. at 71 n.35, 96 S.Ct. at 2453 & n.35 (plurality opinion); *id.* at 84, 96 S.Ct. at 2459 (Powell, J., concurring).

**24.** *See, e. g., Times Film Corp. v. City of Chicago,* 365 U.S. 43, 51, 81 S.Ct. 391, 395, 5 L.Ed.2d 403 (1961) (Warren, C. J., joined by Black, Douglas & Brennan, JJ., dissenting); *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 501, 72 S.Ct. 777, 780, 96 L.Ed. 1098 (1952); *see also Interstate Circuit, Inc. v. City of Dallas,* 390 U.S. 676, 683, 88 S.Ct. 1298, 1302, 20 L.Ed.2d

225 (1968); W. Douglas, *The Right of the People* 72 (1958).

**25.** Peoria Ord., *supra* note 1, § 4–47.

**26.** *Id.* The provisions relative to these inspections, as well as the investigation requirement discussed in Part VI–D of this opinion, *infra,* are as follows:

The City Manager shall within five (5) days refer the copies of such application to the Department of Inspections, the Fire Department, the Police Department and the City Planning Department. These departments shall within thirty (30) days inspect the premises proposed to be operated as an adult business establishment or in case of the Police Department, conduct background investigation of the applicant and all such departments shall make written recommendations to the City Manager concerning the premises' and the applicant's compliance with the matters coming within the jurisdiction of such departments.

Within ten (10) days of receiving the recommendation of the aforesaid departments, the City Manager shall notify the applicant

tiffs have standing to sue because they are directly affected by the inspection requirement. They contend that the requirement is an unconstitutional prior restraint on speech and an impermissible discrimination against speech on the basis of its content.

■ As we earlier noted, defendants conceded that Peoria imposes no licensing requirement on any bookstore except an adult bookstore. Similarly, this special inspection requirement is imposed only on adult bookstores and other adult uses; no ordinary bookstore is subject to it. Defense counsel told us in oral argument that Peoria has certain general building permit and inspection requirements that apply to all business establishments, but that an ordinary bookstore that seeks to open or to continue in existence in Peoria need not under city law be either inspected or licensed first. The inspection requirements are, therefore, prior restraints on speech that have as their operative distinction the content of the books sold in the bookstore. Bookstores with one type of books must be inspected before a license issues; bookstores with another type of books need not be licensed or inspected.

Defense counsel argued that the purpose of these special adult bookstore inspections

was to insure that urban blight is retarded by requiring that adult bookstores, at least, comply with city law. He further argued that among the "deleterious effects" on neighborhoods referred to in the preamble to the ordinance were those that might result from building code violations such as faulty light switches. Aside from our doubt that the preamble is subject to such an interpretation, there is nothing in the record to indicate that adult bookstores, as a class, contain more faulty light switches or other violations than regular bookstores, as a class. We can hardly take judicial notice that such is the case.

■ Peoria has, thus, failed to demonstrate that the special inspection provisions further a legitimate interest "unrelated to the suppression of free expression." [27] Adult bookstores are of course subject to the same lawful health and safety regulations of the city code that are applicable to other business establishments in Peoria. Adult bookstores may not, however, be singled out for special regulation unless the city can demonstrate that such action is narrowly devised to further a substantial and legitimate state interest unrelated to censorship or the suppression of protected expression. [28] The city has come forward

that his application is granted, denied or held for further investigation. Such additional investigation shall not exceed an additional thirty (30) days unless otherwise agreed to by the applicant. Upon the conclusion of such additional investigation, the City Manager shall advise the applicant in writing whether the application is granted or denied.

Whenever an application is denied or held for further investigation, the City Manager shall advise the applicant in writing of the reasons for such action.

Failure or refusal of the applicant to give any information relevant to the investigation of the application or his or her refusal or failure to appear at any reasonable time and place for examination under oath regarding said application or his or her refusal to submit to or cooperate with any inspection or investigation required by this chapter shall constitute an admission by the applicant that he or she is ineligible for such permit and shall be grounds for denial thereof by the City Manager.

Further provisions of the ordinance permit the denial of a license if the proposed adult bookstore is not in compliance with all applicable

city codes and laws, § 4–49(f), prohibit any licensee from permitting anything to occur on licensed premises that is in violation of law, § 4–59, and require that licensees submit to police inspections "from time to time and at least twice a year" to determine compliance with the ordinance, § 4–60. We address the constitutionality of these provisions in Parts VI–F and VIII, *infra.*

27. *See United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968); *cf. Young v. American Mini Theatres, Inc.,* 427 U.S. at 79–80, 96 S.Ct. at 2456–2457 (Powell, J., concurring). Like Justice Powell, we believe the *O'Brien* test is applicable in this context.

28. *United States v. O'Brien, supra,* 391 U.S. at 377, 88 S.Ct. at 1679.

Because Peoria has offered no substantial justification for this content-based discrimination, we need not address the issue of whether the discrimination would have been permissible had Peoria been able to prove that a substantial state interest would be served by the inspection provisions. *Cf., e. g., Young v. American Mini*

with no such justification for the inspection procedures, and they are consequently invalid.

### D. *Investigation Requirement*

The ordinance also requires that the Police Department make a special investigation into the background of those who apply for an adult bookstore license.[29] Plaintiff owners are subject to and have standing to challenge this provision. The purpose of this special investigation, the city informs us, is to assure that those with past records of certain types of misconduct are discovered and forbidden to operate adult bookstores.[30] The investigation is therefore simply a device to further provisions of the ordinance that we find unconstitutional in Part VI–F of this opinion, *infra*. Because the city has offered no justification for the investigation other than the furtherance of an unconstitutional end, and because the investigation would thus invade plaintiffs' privacy for no legitimate purpose, the investigation requirement violates the First and Fourteenth Amendments.

### E. *Application Information Disclosure Requirements*

#### 1. *Applicant Disclosure Requirements*

The ordinance requires that an applicant for an adult use license provide the following information under oath:

(a) Name and address, including all aliases.

(b) Written proof that the individual is at least eighteen (18) years of age.

(c) All residential addresses for the past three (3) years.

(d) The applicant's height, weight, color of eyes and hair.

(e) The business, occupation or employment of the applicant for three (3) years immediately preceding the date of the application.

(f) The adult use or similar business license history of the applicant; whether such person, in previously operating in this or any other city or state under license, has had such license revoked or suspended, the reason therefore [sic], and the business activity or occupation subject to such action of suspension or revocation.

(g) All criminal or city ordinance violation convictions, forfeiture of bond and pleadings of nolo contendere on all charges, except minor traffic violations.

(h) Fingerprints and photograph of the applicant.

(i) The exact nature of the adult use to be conducted and the proposed place of business and facilities thereto.

*Theatres, Inc.*, 427 U.S. at 63–73, 96 S.Ct. at 2448–2453 (plurality opinion); *FCC v. Pacifica Foundation*, 438 U.S. 726, 742–48, 98 S.Ct. 3026, 3036–40, 57 L.Ed.2d 1073 (1978) (Stevens, J., joined by Burger, C. J., & Rehnquist, J.); Farber, *Content Regulation and the First Amendment: A Revisionist View*, 68 Geo.L.J. 727 (1980). *But cf., e. g., Young v. American Mini Theatres, Inc.*, 427 U.S. at 73 n.1, 96 S.Ct. at 2453 n.1 (Powell, J., concurring); *id.* at 84–88, 96 S.Ct. at 2459–2461 (Stewart, J., joined by Brennan, Marshall, & Blackmun, JJ.); *Grayned v. City of Rockford*, 408 U.S. 104, 107, 115, 92 S.Ct. 2294, 2298, 2302, 33 L.Ed.2d 222 (1972); *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); Stone, *Restrictions of Speech Because of its Content: The Peculiar Case of Subject-Matter Restrictions*, 46 U.Chi.L.Rev. 81, 111–12 (1978).

**29.** Peoria Ord., *supra* note 1, § 4–47. The relevant portions are reproduced in note 26 *supra*. Our holding in Parts VI–C and VI–D of this

opinion encompasses the requirement of § 4–47 that a license applicant give "relevant" information and submit to "reasonable" examination under oath to further the task of the inspectors and investigators. As the ends are unconstitutional, the means are equally so.

**30.** The ordinance provides that persons convicted of certain crimes or found guilty of offenses that resulted in the revocation of other types of business licenses may not obtain an adult bookstore license. Peoria Ord., *supra* note 1, § 4–49(c) & (d). We address the validity of these provisions in Part VI–F, *infra*. The ordinance also requires that the applicant for an adult bookstore license reveal information that would aid authorities in determining whether the applicant has been convicted of any such offenses. *Id.* § 4–48. The validity of the disclosure requirements is addressed in Part VI–E, *infra*.

(j) The names and addresses of all persons holding any beneficial interest in the real estate upon which such adult use is to be operated, including but not limited to, contract purchasers or sellers, beneficiaries of land trust or lessees subletting to applicant.

(k) If the premises are leased or being purchased under contract, a copy of such lease or contract shall accompany the application.

(*l*) A statement by the applicant that he or she is familiar with the provisions of this Article and is in compliance with them.[31]

At least one plaintiff will be directly affected by a ruling on the validity of these disclosure requirements, and standing to attack them is therefore present.

■■■ Plaintiffs contend that these provisions are unconstitutional prior restraints on speech and invasions of privacy. They fall into two groups. In the first group are those contained in subsections (a), (b), (i), and (*l*). We do not understand plaintiffs to contest the validity of subsection (b). The others, except for the required disclosure of all aliases in (a), are legitimately related to the state interest that underlies the zoning provisions that force a separation of adult uses and are therefore valid under our decision in Part V of this opinion, *supra*. The alias disclosure requirement involves an invasion of privacy not justified by the zoning interest and is not otherwise justified. It is therefore invalid.

■■■ The second group of disclosure requirements includes subsections (c) through (h), (j), and (k). The city has argued that these provisions, like the investigation provision, are directed toward the goal of keeping anyone convicted of certain past wrongs from operating or having any interest in an adult use. For the reasons stated in Part VI–F of this opinion, *infra*, these provisions cannot be sustained as furthering the state interest shown by this record. Because

they invade plaintiffs' privacy without any legitimate justification, they are prohibited by the First and Fourteenth Amendments.

2. *Disclosure Requirements for Others Who Have an Interest in an Adult Bookstore*

The ordinance requires that information of the same kind required of an applicant for an adult bookstore license must also be provided by "any partner or limited partner of the partnership applicant," "any officer or director of the corporate applicant," "any stockholder holding more than ten (10) percent of the stock of a corporate applicant," and "any other person who is interested directly in the ownership or operation of the business." [32] Plaintiffs argue that these requirements are invalid as prior restraints and invasions of the First Amendment right of associational privacy.

■■■ We must first address plaintiffs' standing. There are no plaintiffs who allege facts that would place them in the categories of partners, limited partners, or "any other person" who has an interest in an adult bookstore. We are, therefore, without jurisdiction to entertain challenges to these provisions. Portions of the district court's judgment upholding or invalidating these provisions are vacated, and the allegations as to these provisions are dismissed for want of a justiciable case or controversy.

■■■ There are, however, a corporate plaintiff and a corporate officer plaintiff who have standing to challenge the disclosure requirements that apply to officers, directors, and stockholders of a corporate applicant. We have not been advised whether the plaintiff owner that has sought and obtained a license is the corporate plaintiff. If it is, its officers, directors, and stockholders holding over ten percent of its stock have already disclosed the information required under the ordinance. Nevertheless, the license will have to be renewed, and the owners, directors, and officers may

---

**31.** Peoria Ord., *supra* note 1, § 4–48.

**32.** *Id.*

change, so we believe the corporate plaintiff at least has a sufficient personal stake in the outcome of a challenge to the validity of these disclosure requirements to support standing.

The limited information that will be pertinent to enforcement of the scatter zoning provisions will be provided to the city by the application of the corporation itself. There would seem to be no purpose other than harassment in requiring the individual officers, directors, and stockholders to file separate statements or applications under oath. Requiring them to do so is an unjustified prior restraint and an invasion of privacy.[33] Accordingly, the disclosure requirements as to officers, directors, and stockholders of corporate applicants are invalid.

### F. *Standards for License Issuance*

The Peoria ordinance provides that a license shall issue to an applicant unless:

(a) [T]he applicant is under [the] age of eighteen (18) years or under any legal disability.

(b) The applicant is a person who is not of good moral character and reputation in the community in which he or she resides.

(c) The applicant has been convicted of any of the following offenses, unless upon investigation the City Manager finds that such convictions occurred at least four (4) years prior to the date of the application, that the applicant has had no subsequent convictions and has shown evidence of rehabilitation sufficient to warrant the public trust:

(1) A felony under federal laws or the laws of this or any other state,

(2) Prostitution, soliciting for a prostitute, pandering, keeping a place of prostitution, patronizing a prostitute, pimping, obscenity, selling harmful material or having a tie in the sale of obscene publications to distributors, under the laws of this state or equivalent laws or ordinances of the United States or any other state or city, or any other crime or misdemeanor opposed to decency and morality.

(d) The applicant has held an interest in a license either under this Article, Article X of Chapter 16 of the Code of the City of Peoria, which regulates massage establishments, or Chapter 3 of the Code of the City of Peoria which regulates alcoholic liquor and [said license] has been revoked for cause.

(e) The applicant, at the time of application for renewal of any license issued under this Article, would not be eligible for such license upon a first application.

(f) The operation as proposed by the applicant, if permitted, would not have complied with all applicable laws, including but not limited to building, health, planning, housing, zoning and fire codes of the City of Peoria.[34]

We do not understand plaintiffs to challenge the validity of subsection (a). Plaintiffs have standing to contest the validity of subsection (b). Counsel for defendants virtually conceded in oral argument before this court that this subsection is invalid, and we hold it to be so because it gives city authorities an overbroad discretion to impose a prior restraint on protected speech.[35] The district court's judgment in this regard is affirmed.

---

33. *Cf. NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Bates v. City of Little Rock*, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); *Talley v. California*, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960).

34. Peoria Ord., *supra* note 1, § 4–49.

35. *See, e. g., Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Coates v. City of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Staub v. City of Baxley*, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); *Kunz v. New York*, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); *Winters v. New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Schneider v. New Jersey*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

Plaintiffs are subject to and have standing to attack subsections (e) and (f). Subsection (e) is constitutional to the extent that the licensing provisions of the ordinance are found to be so, because it merely states that a license shall be renewed according to the same standards under which a license may be issued. Subsection (f), we think, is subject to the same objection as the special inspection requirements we held invalid in Part VI–C of this opinion, *supra*. Only adult bookstores are subject to the licensing requirement, so other bookstores are not subject to this prior restraint on their operations. Peoria must enforce its building, health, safety, and fire codes in an evenhanded manner and cannot selectively enforce them against a bookstore because of the content of the books that it sells.[36] For the reasons stated in Part VI–C, *supra*, we hold the compliance requirement unconstitutional insofar as it relates to matters other than compliance with the zoning provisions of the adult use ordinance.

Plaintiff owners are sufficiently affected by subsections (c) and (d) to have a personal stake in the outcome of an attack on their validity, even absent allegations that licenses would be denied to any plaintiff owner because of the provisions. Among other things, subsections (c) and (d) would make it more difficult for the owners to sell their interests in their adult bookstores, would present a continuing threat of loss of license in the event of future conviction of one of the specified offenses, and would subject the owners to the investigative and information disclosure requirements earlier discussed in Parts VI–D and VI–E–1 of this opinion, *supra*. Plaintiffs therefore have Article III standing.

We also believe that, as a discretionary matter, plaintiffs have standing to attack the provisions in subsections (c) and (d). The provisions present a real and substantial threat of chilling protected speech by persons convicted of certain past crimes or wrongs. Accordingly, plaintiffs may assert the interests of persons not now before the court in their attack on the validity of these provisions.[37]

The provisions in question may be summarized as follows: anyone convicted during the preceding four years of any felony, any prostitution-related offense, any obscenity-related offense, or any offense "opposed to decency and morality" cannot operate an adult bookstore in Peoria; anyone who has ever possessed a Peoria massage parlor or liquor license that has been revoked for cause is also forbidden to operate an adult bookstore in Peoria. The provisions thus totally prohibit certain classes of persons from selling in Peoria books that are protected by the First Amendment.

The freedom to operate a bookstore is unquestionably protected by the First Amendment. Preservation of freedom of expression requires protection of the means of disseminating expression. *Lovell v. City of Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *see Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64–65 n.6, 83 S.Ct. 631, 636 n.6, 9 L.Ed.2d 584 (1963); *see also Times Film Corp. v. City of Chicago*, 365 U.S. 43, 56 n.3, 81 S.Ct. 391, 398 n.6, 5 L.Ed.3d 403 (1961) (Warren, C. J., dissenting); *cf. Abrams v. United States*, 250 U.S. 616, 630, 40 S.Ct. 17, 22, 63 L.Ed. 1173 (1919) (Holmes, J., joined by Brandeis, J., dissenting). We do not understand the city to contend otherwise.

As previously noted, the only record support for the city's position that it has a substantial and legitimate interest in denying those convicted of the specified crimes or offenses the freedom to operate an adult bookstore is found in the preamble to the ordinance. That document recites an interest in protecting minors and city neighborhoods from the "deleterious effects" of adult bookstores and other adult uses, which are said to result particularly

---

**36.** *See* note 28 *supra*, and accompanying text.

**37.** *See Young v. American Mini Theatres, Inc.*, 427 U.S. at 59–60, 96 S.Ct. at 2446–2447; *Broa-*

*drick v. Oklahoma*, 413 U.S. 601, 611–14, 93 S.Ct. 2908, 2915–17, 37 L.Ed.2d 830 (1973).

when adult uses are congregated.[38] The provisions in question have nothing to do with the scatter zoning purpose of the ordinance and cannot be supported by reference to that purpose.

Counsel for Peoria has argued that one of the deleterious effects caused by adult uses is an increase in crime, that those who have committed past crimes or offenses are more likely to commit them again, and that the prohibitions of the ordinance will, by keeping the past offender and the adult use separate, cause a decrease in crime and ordinance violations. Nothing in the preamble or elsewhere in the slender record supports these contentions, and they are not the sort of which we may take judicial notice. We find nothing in *Young v. American Mini Theatres, Inc., supra,* to support counsel's argument.[39] Thus, even if we were to assume that proper proof of coun-

sel's contentions would legitimize the broad prior restraint on First Amendment freedoms that the ordinance seeks to impose,[40] defendants have failed to produce such proof. The city is required, at the very least, to demonstrate the existence of a substantial and legitimate state interest that is unrelated to the suppression of free expression and that cannot be effectuated by means that impact less drastically on protected freedoms.[41] No element of the required showing has been made. We affirm the judgment of the district court holding subsections (c) and (d) invalid as unconstitutional prior restraints on speech.

### G. License Revocation Provisions

 The provisions governing suspension or revocation of an adult bookstore license are reproduced in the margin.[42] Be-

---

**38.** See text at note 5 *supra.*

**39.** Section 5–2–3 of the Detroit ordinance that was before the Court in *Young* provided as follows:

The Mayor may refuse to issue a license for the operation of any business regulated by this article, and may revoke any license already issued upon proof submitted to him of the violation by an applicant, or licensee, his agent or employee, within the preceding two years, of any criminal statute of the State, or of any ordinance of this city regulating, controlling or in any way relating to the construction, use or operation of any of the establishments included in this article which evidences a flagrant disregard for the safety or welfare of either the patrons, employees, or persons residing or doing business nearby. See *Young v. American Mini Theatres, Inc.,* 427 U.S. at 91, 96 S.Ct. at 2462 (Blackmun, J., dissenting). The provision was not, apparently, at issue in *Young,* and the majority in that case did not rule on its validity. Even if we were to assume it valid, its wording was imprecise and readily subject to a narrowing construction. The Peoria provisions are detailed and precise; they are not readily subject to narrowing. We think that the Detroit provision is of no help to defendants here.

**40.** We know of no doctrine that permits the state to deny to a person First Amendment liberties other than the right to vote solely because that person was once convicted of a crime or other offense. Defendants have cited no authority to this effect. Cf. *Perrine v. Municipal Court,* 5 Cal.3d 656, 97 Cal.Rptr. 320, 488 P.2d 648 (1971), cert. denied, 404 U.S. 1038, 92 S.Ct. 710, 30 L.Ed.2d 729 (1972); *Alexander*

*v. City of St. Paul,* 303 Minn. 201, 227 N.W.2d 370 (1975); *Seattle v. Bittner,* 81 Wash.2d 747, 505 P.2d 126 (1973). See also *Vance v. Universal Amusement Co.,* ── U.S. ──, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); *United States v. O'Brien,* 391 U.S. 367, 388–89, 88 S.Ct. 1673, 1685, 20 L.Ed.2d 672 (1968) (Harlan, J., concurring); *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

**41.** *United States v. O'Brien,* 391 U.S. 367, 377 (1968); see note 27 *supra.*

**42.** Peoria Ord., *supra* note 1, § 4–50 provides:
Any license issued for an adult use may be revoked or suspended by the City Manager if the City Manager shall find:
(a) That the license[e] has violated any of the provisions of this Article regulating adult uses.
(b) The licensee has committed any of the offenses listed in Section 4–49(c) of this Article.
(c) The licensee has knowingly furnished false or misleading information or withheld relevant information on any application for any license or permit required by this Article or knowingly caused or suffered another to furnish or withhold such information on his or her behalf.
(d) The licensee has violated Article X of Chapter 16 of the Code of the City of Peoria regulating massage establishments or Chapter 3 of the Code of the City of Peoria regulating alcoholic liquor.
The licensee shall be responsible for the acts of his agents, servants and employees provided, however, that in the case of a first

cause of our holding in Part VI–F, *supra*, we hold that plaintiffs have standing to contest subsections (b) and (d) and further hold them both unconstitutional as prior restraints on speech. Subsection (a), which allows revocation if the licensee has violated other provisions of the ordinance, is constitutional to the extent that other provisions of the ordinance are constitutional. Subsection (c), which allows revocation if the applicant furnishes or permits to be furnished any false information on a license application form or an employee permit form is directly applicable to plaintiffs. Standing to contest its validity is present. We find the provision constitutional, but we note that it must be enforced in conformity with our holdings in Parts VI–E, *supra*, and VII, *infra*, concerning information disclosure and employee permit requirements. The parties have not specifically addressed the remaining provisions, and we see no problem with them if they are enforced in conformity with this opinion.

## VII. *Employee Permit Requirement*

The ordinance requires that before being employed in an adult bookstore a person must obtain an employee permit. Provisions governing the permit requirement are reproduced in the margin.[43] The employee plaintiffs are directly affected by these provisions and, under principles stated

---

offense by a licensee where the conduct was solely that of an employee, the penalty shall not exceed a suspension of thirty (30) days if the City Manager shall find that the licensee had no actual or constructive knowledge of such violation and could not by the exercise of due diligence have had such actual or constructive knowledge.

The City Manager before revoking or suspending any license shall give the licensee at least ten (10) days written notice of the charges against him or her and the opportunity for a public hearing before the City Manager at which time the licensee may present evidence bearing upon the question. In such cases, the charges shall be specific and in writing.

**43.** Peoria Ord., *supra* note 1, §§ 4–53 & 4–54 provide:

Sec. 4–53. Adult Use Employee Permit.

Any person, including a licensee, who actually engages in the providing of goods or services to the public in connection with the adult use shall file an application for an adult use employee permit with the City Manager upon a form provided by the City Manager and shall pay a nonrefundable filing fee of twenty-five dollars ($25.00) for an original application and ten dollars ($10.00) for a renewal application to the City Treasurer who shall issue a receipt which shall be attached to the application filed with the City Manager.

The application for an adult use employee permit shall contain substantially the same information as the application for adult use license, except for the names and addresses of the owners of the real estate and any leases or contracts concerning the real estate.

The City Manager may issue an adult use employee permit within twenty-one (21) days following the application, unless he finds that the applicant would not have been eligible for an adult use license under the terms of Section 4–49 of this Article.

Every adult use employee permit issued pursuant to this Article will terminate at the expiration of one (1) year from the date of its issuance, unless sooner revoked.

Sec. 4–54. Revocation Or Suspension Of Adult Use Employee Permit.

Any adult use employee permit may be revoked or suspended by the City Manager if the City Manager shall find:

(a) That the permittee has violated any of the provisions of this Article regulating adult uses.

(b) The permittee has knowingly furnished false or misleading information or withheld relevant information on any application for any license or permit required by this Article or knowingly caused or suffered another to furnish or withhold such information on his or her behalf.

Any adult use employee permit shall be revoked by the City Manager if the City Manager shall find that the permittee has committed any of the offenses listed in Section 4–49(c) of this Article.

The City Manager in revoking or suspending an adult use employee permit shall give the permit holder written notice specifying the grounds therefore [sic]. Such person may within ten (10) days of such revocation or suspension file a written request with the City Manager for a public hearing before the City Manager at which time the permittee may present evidence bearing upon the question.

The City Manager may in his discretion conduct such hearing concurrently with a hearing pursuant to Section 4–50 for the adult use license, unless it shall appear that such a joint hearing would prejudice the rights of the licensee or the permittee involved.

elsewhere in this opinion, have standing to contest their validity. The district court held the permit provisions unconstitutional in their entirety. We affirm that holding on the ground that they are prior restraints on speech that are unrelated to any legitimate interest asserted by the city and supported by the record. The applicable principles are stated in Part VI–E–1 and Part VI–F of this opinion, *supra.*

### VIII. *Miscellaneous Provisions*

▮▮▮▮ The ordinance requires the prominent display of an adult use license and the availability during business hours of employee permits and employee identification cards that are to be issued by the Peoria police department.[44] For the reasons given in Part VII of this opinion, *supra*, the provisions relating to employee permits and identification cards are unconstitutional. The license display requirement has no discernible impact on protected freedoms and is not totally irrational. We uphold it.

▮▮▮ The ordinance requires that the licensee must ensure that his employees have obtained an adult bookstore employment permit.[45] In accordance with our holding in Part VII of this opinion, *supra*, we hold this provision invalid.

The ordinance requires that no licensee or person associated with a licensee shall permit anything to occur on licensed premises that is in any manner unlawful.[46] On the assumption that Peoria does not mean by this provision to enlarge the licensee's vicarious criminal liability beyond traditional bounds, we see no problem with the provision. As we construe it, it is merely a legal redundancy.

▮▮ The ordinance provides that the police shall inspect each licensed business not less than twice a year to determine compliance with the ordinance.[47] Licensees are required to submit to these inspections. For the reasons stated in Parts VI–C and VI–F of this opinion, we hold this singling out of adult bookstores for special regulation to be impermissible. The record shows no basis for this special inspection requirement.

### IX. *Conclusion*

For convenient reference, we include in the margin a listing by section number of our rulings on the constitutionality of the various provisions.[48] It is our understanding that the parties do not dispute the validity of provisions in the ordinance not directly addressed in this opinion. It is to be again noted that this opinion deals with the constitutionality of the ordinance as it applies to adult bookstores. We have before us no issue concerning the validity of the ordinance as it may be applied to other adult uses.

Affirmed In Part, Reversed In Part, And Vacated In Part.

---

44. Peoria Ord., *supra* note 1, § 4–55.

45. *Id.* § 4–57.

46. *Id.* § 4–59.

47. *Id.* § 4–60.

48. The following provisions we hold unconstitutional: the portions of § 4–47 dealing with inspections, investigations, applicant cooperation, and applicant interrogation; § 4–48(a) as it relates to aliases, (c), (d), (e), (f), (g), (h), (j), and (k) as they relate to applicant disclosure; all of § 4–48 as it relates to disclosure by corporate officers, directors, and stockholders; § 4–49(b), (c), (d), and (f) except as subsection (f) relates to compliance with the zoning provisions; § 4–50(b) and (d); § 4–53; § 4–54; § 4–55 as it relates to employee permits and identification cards; § 4–57; and § 4–60.

The following provisions we hold constitutional: § 4–45A; § 4–46 as it applies to § 4–45A; the provisions of § 4–47 that require a license and the payment of a fee; § 4–48(a) except as it involves aliases, (b), (i), and (*l*) as those subsections apply to disclosure by applicants; § 4–49(a), (e), and the parts of (f) relating to compliance with § 4–45A; § 4–50(a) and (c) and the provisions following subsection (d); § 4–55 as it relates to the display of licenses; and § 4–59.

We hold plaintiffs without standing to attack the following provisions: 4–43A, G, and H; 4–45B and C; and portions of § 4–48 that relate to disclosure by partners, limited partners, or other interested persons.