ENTERTAINMENT CONCEPTS, INC., III, Plaintiff–Appellee,

v.

Robert T. MACIEJEWSKI, etc., Ben Bender, William W. Boesch, Edward T. Mecler, Betty Werth, Gregory Szymski, John A. Gradle, etc., Richard E. Johnson, etc., Thomas Fischer, etc., Marsha Kusreau, Sally Wilkins, and Helen Budo, etc., Defendants–Appellants.

ENTERTAINMENT CONCEPTS, INC., III, Plaintiff–Appellant,

v.

Robert T. MACIEJEWSKI, etc., Ben Bender, William W. Boesch, Edward T. Mecler, Betty Werth, Gregory Szymski, John A. Gradle, etc., Richard E. Johnson, etc., Thomas Fischer, etc., Marsha Kusreau, Sally Wilkins, and Helen Budo, etc., Defendants–Appellees.

Nos. 79-2473, 79-2482 and 79-2517.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1980.

Decided Sept. 23, 1980.

Peter A. Zamis, Wheaton, Ill., for defendants–appellants.

Stephen M. Taylor, Southfield, Mich., for plaintiff–appellee.

Before FAIRCHILD, Chief Circuit Judge, BAUER, Circuit Judge, and GRANT, Senior District Judge.*

BAUER, Circuit Judge.

The defendants appeal an order of the district court permanently enjoining enforcement of two Village of Westmont ordinances. The first ordinance zones so–called "adult" movie theatres as a special use, and the second provides for the suspension or revocation of the license of any theatre that shows obscene movies. Plaintiff cross–appeals the district court's denial of attorneys' fees. We affirm the grant of the permanent injunction and reverse the denial of attorney's fees.

I

Plaintiff Entertainment Concepts, Inc., III operates a motion picture theatre known as Studio Eleven, Cinema I and Cinema II, located in Westmont, Illinois, a suburb of Chicago. Plaintiff has operated the theatre since December 22, 1978. The Studio Eleven is the only movie theatre in the Village of Westmont.

* The Honorable Robert A. Grant, Senior Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

On September 21, 1979, plaintiff began advertising "Coming Soon, Adult Movies" on its marquee. The theatre scheduled the movie "Beneath the Valley of the Ultra–Vixens" to open on November 9, 1979.

On October 25, 1979, plaintiff filed suit in the district court seeking an injunction, declaratory relief, and damages under 42 U.S.C. § 1983. Plaintiff alleged that the defendants, who are various elected or appointed municipal officials of the Village of Westmont (hereinafter referred to collectively as "the Village"), had acted under color of their authority to deprive the plaintiff of its constitutionally protected rights under the First and Fourteenth Amendments to the Constitution of the United States. Plaintiff attacked the constitutionality of two ordinances of the Village of Westmont.

The first ordinance, referred to by the parties as the adult movie zoning ordinance, amends the Village's zoning ordinance. The zoning ordinance of the Village divides various types of business establishments into "permitted" and "special" uses. "Special" uses, in contrast to permitted ones, require the prior authorization of the Village Board of Trustees. Approval may be granted only after a public hearing conducted by the Zoning Board of Appeals, pursuant to public notice as required under Illinois law. Ill.Rev.Stat. ch. 24, §§ 11–13–1.1, –6, –7.

Prior to amendment, the Westmont zoning ordinance provided that indoor movie theatres were permitted uses in business districts B–1 and B–2. The amendment, passed on October 1, 1979, created a new category–"Adult movies indoor theatres"– and listed it as a special use. Code of Ordinances of the Village of Westmont § 7.03. The entire ordinance consists of a one–line addition to a chart of permitted and special uses, and the term "adult movies" is not defined.

The second ordinance, referred to by the parties as the license revocation ordinance, prohibits the exhibition of obscene motion pictures. The first two paragraphs of the ordinance, which are not challenged here, state the offense and provide a definition of obscenity.[1] Paragraphs 3 and 4 establish the following procedure and penalties for movies alleged to be obscene:

3. The Mayor shall appoint, subject to Board approval, three (3) Westmont residents to constitute a Movie Review Committee. The Committee shall review motion pictures publicly exhibited within the Village to determine whether or not they are obscene. If a majority of the Movie Review Committee determines a motion picture to be obscene, as defined by paragraph 2, they shall make a written report of their findings to the Mayor. The Mayor, upon receipt of a report by the Movie Review Committee declaring a motion picture obscene, shall invoke the penalties prescribed in paragraph 4 of this section. Nothing herein shall be construed as preventing or discouraging any party who claims to be aggrieved by application of this Ordinance from seeking prompt judicial review of any determination made hereunder.

4. Upon receipt of a report by the Movie Review Committee declaring a motion picture obscene, the Mayor shall conduct an adversary–type hearing at which the motion picture licensee shall have an opportunity to contest the report of the Movie Review Committee. Should the Mayor and Movie Review Committee find that the motion picture in question is in fact obscene, for the first offense, the Mayor shall suspend the motion picture license for a period not to exceed 90 days. For the second offense, the Mayor shall suspend the motion pic-

---

1. Paragraph 2 of the ordinance, which details the definition of obscenity, was amended on October 29, 1979, four days after plaintiff filed this suit. The parties stipulated to the admission of the new ordinance into evidence and plaintiff was permitted to amend his pleading to include the new ordinance. The amendment does not change the status of the case since paragraph 2 is not challenged as unconstitutional.

ture license for a period not to exceed 180 days. For the third offense, the Mayor shall permanently revoke the motion picture license.

Code of Ordinances of the Village of Westmont § 5.136.

After a hearing, the district court issued a permanent injunction enjoining the defendants from enforcing the licensing revocation ordinance and the adult movie zoning ordinance. The court denied plaintiff's request for declaratory relief and damages and dismissed the action without costs, each party to bear its own costs.

On December 11, 1979, plaintiff filed a motion for clarification and/or reconsideration of fees and a motion for attorneys' fees. After a hearing, the court denied both motions.

## II

■ The Village, at the outset, challenges the propriety of adjudicating plaintiff's suit at this time. The Village contends that the lack of any proceedings against plaintiff at the time it filed suit renders the present case unripe for judicial resolution. We disagree.

The concept of ripeness is founded in the constitutional requirement that there must be a "case or controversy" before courts can act. That controversy must not be merely speculative; rather, it must be a concrete dispute between the parties "in order to avoid overstatement [and] to focus attention on a narrow problem." Currie, Federal Courts 91 (1975).

The requirement of concreteness, however, does not in and of itself require that the plaintiff be the subject of some administrative or judicial proceeding at the time of suit. The Supreme Court has often upheld the grant of injunctive relief against laws before prosecution. See, e.g., Doe v. Bolton, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973) (pregnant woman and doctors allowed to challenge an anti-abortion law); Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) (no criminal charges pending against school teacher attacking anti–evolution statute).

Plaintiff is the only movie theatre in Westmont. The Village Board of Trustees amended the zoning ordinance one week after the theatre began advertising "adult movies coming soon." Similarly, the Board of Trustees amended the licensing revocation ordinance during the pendency of this suit. Even though it has not specifically threatened plaintiff with prosecution, the Village's conduct indicates more than a broad policy that it will enforce the laws generally. See Poe v. Ullman, 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961). Plaintiff can reasonably assert that it fears enforcement of these two ordinances for specific conduct on its part. "Under such circumstances, this Court does not feel it 'necessary that [plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute he claims deters the exercise of his constitutional rights.'" Natco Theatres v. Ratner, 463 F.Supp. 1124, 1127 (S.D.N.Y.1979), quoting Steffel v. Thompson, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974). See Craig v. Boren, 429 U.S. 190, 194, 97 S.Ct. 451, 455, 50 L.Ed.2d 397 (1976).

■ Plaintiff's challenges to the statutes here also do not depend on exhaustion of any administrative procedure. Plaintiff indeed challenges the necessity of having to go through any administrative procedure whatsoever. Plaintiff also alleges that the vagueness of the ordinance makes it uncertain whether the adult movie zoning ordinance applies to it at all; if it does apply, plaintiff attacks the ordinance's lack of standards. "In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license." Freedman v. Maryland, 380 U.S. 51, 56, 85 S.Ct. 734, 737, 13 L.Ed.2d 649 (1965). Similarly, no film of plaintiff has been declared obscene. But plaintiff need not risk closure of its theatre in order to activate judicial review. Plaintiff alleges "infringement of

a constitutional right by the administrative process itself." *Moore v. East Cleveland*, 431 U.S. 494, 528 n.3, 97 S.Ct. 1932, 1950, 52 L.Ed.2d 531 (1977) (Burger, C. J., dissenting); *Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980). Such a "broadside attack" presents a justiciable controversy. *See Times Film Corp. v. Chicago*, 365 U.S. 43, 50, 81 S.Ct. 391, 395, 5 L.Ed.2d 403 (1961).

We conclude that plaintiff's case is ripe for resolution at this time.

### III

Plaintiff challenges the constitutionality of the Westmont adult movie zoning ordinance on several grounds. It contends (1) that the ordinance is so vague that it violates the Due Process clause of the Fourteenth Amendment; (2) that it is invalid under the First Amendment as a prior restraint on protected communication; and (3) that the classification of theatres on the basis of the content of the movies shown violates the Equal Protection clause of the Fourteenth Amendment.[2] We will address each of these arguments in turn.

### A

■ The vagueness doctrine rests on the due process requirement of notice. *Smith v. Goguen*, 415 U.S. 566, 572, 94 S.Ct. 1242, 1246, 39 L.Ed.2d 605 (1974). Due process requires that an ordinance have a minimum degree of definiteness so that an individual has "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Jordan v. DeGeorge*, 341 U.S. 223, 231–32, 71 S.Ct. 703, 708, 95 L.Ed. 886 (1951).

[W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s]" upon sensitive areas of basic First Amendment freedoms, it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked."

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972) (footnotes omitted).

The Westmont adult movie ordinance offends all the values catalogued in *Grayned*. As already noted, the entire adult movie zoning ordinance is nothing more than a one–line addition to the list of permitted and special uses in the Village of Westmont's zoning ordinance. Nothing that could be called a "legislative history" accompanies the ordinance. Heretofore, plaintiff has only shown movies for a general audience. Because it contains no definition of the term "adult," plaintiff does not know if it now must apply for special use permit even if it shows only one "X" rated or "R" rated movie. As the Supreme Court stated in *Smith v. Goguen*, this ordinance

is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard for conduct is specified at all." Such a provision simply has *no* core. This absence of any ascertainable standard for inclusion and exclusion is precisely what offends the due process clause.

415 U.S. at 578, 94 S.Ct. at 1249. (Citations omitted.)

---

**2.** Because of our resolution of this appeal, we do not consider plaintiff's overbreadth argument.

**502**

The ordinance also gives no standards for its application by those who administer it. The ordinance provides that

> The Board of Trustees, upon report of the Zoning Board of Appeals and without further public hearing, may grant or deny any proposed Special Use in accordance with applicable Illinois Statutes or may refer it back to the Zoning Board of Appeals for further consideration.

Code of Ordinances of the Village of Westmont § 13.09(D)(1). The only limitation is the "purpose" section of the zoning ordinance. Those purposes [3] simply define two classes of special uses and do not provide any guidance whatsoever. The ordinance in operation thus grants unfettered discretion to the local officials in deciding whether to grant or deny a special use.

The Village attempts to narrow the scope of the ordinance in its brief and oral argument. While admitting that there is no support for such a construction on the face of the ordinance, the Village asserts that it considers "adult" to encompass "movies that are qualitatively different (*i. e.*, sexually explicit) than those [the plaintiff] has been showing for the past eleven months." Even if this were an adequate definition, resort to bootstrapping is no substitute for a legislative definition of the term "adult." Nor could a judicial construction of the ordinance be accomplished without wholesale rewriting of the statute, which is not our function. *See Smith v. Goguen*, 415 U.S. at 575, 94 S.Ct. at 1248; Amsterdam, *The Void–For–Vagueness Doctrine in the Supreme Court*, 109 U.Pa.L.Rev. 67, 73–74 n.34 (1960).

The Village also challenges plaintiff's standing to litigate the vagueness issue. The Village argues that the ordinance is not vague, at least as to the plaintiff, because of certain statements made by plaintiff in its complaint. Plaintiff alleges in its complaint that it wishes to offer "to the adult citizens . . . motion picture films dealing in sex and nudity [and] that Petitioner has booked into its theatre a motion picture film entitled 'Beneath the Valley of the Ultra–Vixens'; that upon information and belief, said film treats sex in an honest, explicit and forthright manner and Petitioner intends to restrict viewing to those individuals who have attained that age of majority." According to the Village, plaintiff's allegations are "concessions" that, when coupled with plaintiff's advertisement on its marquee of "adult movies coming soon," constitute an admission that plaintiff falls within the ordinance.

We recently considered a similar challenge to standing in *Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980). We held there that the plaintiffs lacked standing to contest, on vagueness grounds, the definition of "adult bookstore" contained in a Peoria ordinance. Plaintiffs lacked standing because they explicitly acknowledged that their bookstores fell within the scope of the definition found in the ordinance. That acknowledgment was not gleaned from the plaintiffs' allegations of intended future conduct; it was an explicit statement. Plaintiffs further expressly admitted that their bookstores' wares dealt in substantially the type of "specified sexual activities" listed in the ordinance. *Id.* at 1209–10. Thus, not only did the *Genusa*

---

**3.** The ordinance provides:

> In addition to such permitted compatible uses, however, it is recognized that there are other uses which it may be necessary or desirable to allow in a given district but which may have a unique, special, or unusual impact on the use and enjoyment of neighboring property and upon public facilities and therefore need to be carefully regulated with respect to location or operation for the protection of the community. Such uses are classified in this comprehensive amendment as Special Uses and fall into two categories:

> 1. Uses either municipally operated or operated by publicly regulated utilities, or uses traditionally affected by public interest.
> 2. Uses entirely private in character which, on account of their peculiar locational need, the nature of the service they offer to the public, and their possible damaging influence on the neighborhood, may have to be established in a district or districts in which they cannot reasonably be allowed as an unrestricted permitted use under the regulations of this comprehensive amendment.

Code of Ordinances of the Village of Westmont § 13.09(A).

plaintiffs expressly acknowledge that they were covered by the ordinance, but the ordinance itself made that admission sustainable because it contained a narrowly drawn definition of "adult bookstore." [4]

In contrast, plaintiff has made no such acknowledgement here, nor is there any definition of adult in the ordinance. Plaintiff's "concessions," even if they may properly be characterized as such, demonstrate only that it is unsure whether it falls within the ordinance and that it fears enforcement. Because of the ordinance, plaintiff has not yet shown "Beneath the Valley of the Ultra–Vixens." The deterrent effect of the ordinance is thus "both real and substantial." *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 60, 96 S.Ct. 2440, 2447, 49 L.Ed.2d 310 (1976). Plaintiff's allegations or defendants' oral assertions are no substitute for narrow statutory language.

Plaintiff has standing to contest the Westmont ordinance on vagueness grounds.[5] The ordinance "requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1927). The ordinance further provides absolutely no guide for its enforcement. We therefore hold that the ordinance is unconstitutionally vague and unenforceable.

**B**

■ Plaintiff further charges that, whatever the definition of "adult," the ordinance is an impermissible classification of speech based on content and is a prior restraint on protected communication. We agree that the ordinance's unequal treatment of "adult" and non–adult movies amounts to a violation of Equal Protection guaranteed by the Fourteenth Amendment and that the requirement of a special use permit is an unconstitutional prior restraint.

In *Young v. American Mini Theatres, Inc.*, 427 U.S. at 70–71, 96 S.Ct. at 2452, the Supreme Court recognized that the content of speech may be a valid classification for zoning purposes. That classification, however, must serve a valid state interest and not impermissibly suppress protected speech. *Id.* at 71–72, 96 S.Ct. at 2452–2453.

---

4. The Peoria Ordinance read:

> *Adult Book Stores:* An establishment having as a substantial portion of its stock in trade, books, magazines, films for sale or viewing on premises by use of motion picture devices or any other coin–operated means, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to "Specified Sexual Activities," or "Special Anatomical Areas" or an establishment with a segment or section devoted to the sale or display of such material.

The terms "specified sexual activities" and "specified anatomical areas" were defined as follows:

> G. *Specified Sexual Activities* are any of the following conditions:
> 1. Human genitals in a state of sexual stimulation or arousal;
> 2. Acts or representations of acts of human masturbation, sexual intercourse or sodomy, bestiality, oral copulation or flagellation;
> 3. Fondling or erotic touching of human genitals, pubic region, buttock or female breast.

> 4. Excretory functions as part of or in connection with any activities set forth in (1) through (3) above.
> H. *Specified Anatomical Areas* are any of the following conditions:
> 1. Less than completely and opaquely covered: (a) human genitals, pubic region, or pubic hair (b) buttock and (c) female breast below a point immediately above the top of the areola; and
> 2. Human male genitals in a discernibly turgid state, even if completely opaquely covered.

The definitions are virtually identical to definitions in the Detroit ordinance that was at issue in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 53 nn. 4 & 5, 96 S.Ct. 2440, 2444 nn. 4 & 5 (1976) except for subsection G.4, which did not appear in the Detroit ordinance. See *Genusa*, 619 F.2d at 1209. The *Young* court also declined to rule on a vagueness challenge to the Detroit ordinance. *Young*, 427 U.S. at 61, 96 S.Ct. at 2447.

5. Since plaintiff is asserting its own First Amendment rights, we need not consider whether the doctrine of vicarious standing or its exceptions apply. *See generally Genusa*, 619 F.2d at 1209–10.

While both the plurality and concurring opinions in *Young* explored the relationship between the regulation and the state interest advanced, Justice Powell's concurrence followed the four–part test set forth in *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). *See Young*, 427 U.S. at 79–80, 96 S.Ct. at 2456–2457 (Powell, J., concurring). We recently adopted that approach in *Genusa*, 619 F.2d at 1214 n.27, and will follow it here.

The Village admittedly has the power to make zoning ordinances and is empowered under Illinois law to designate some uses as special uses. *See Berman v. Parker*, 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954); Ill.Rev.Stat. ch. 24, § 11–13–1.1. It thus meets the first test of *O'Brien*.

The second and third tests are that the regulation must further an important or substantial governmental interest and that the governmental interest must be unrelated to the suppression of free speech. *O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679; *Young*, 427 U.S. at 79–80, 96 S.Ct. at 2456–2457 (Powell, J., concurring). The *Young* ordinance required that a defined class of adult uses be separated by a distance of 500 feet from one another. The Court held that the regulation served a valid state interest in preventing urban blight. The *Young* ordinance also did not act to suppress speech because it did not prohibit, but merely regulated the location of, adult uses. *Young*, 427 U.S. at 71–73, 80, 96 S.Ct. at 2452–2453, 2457 (Powell, J., concurring). *See also Genusa*, 619 F.2d at 1211.

The Village of Westmont does not even attempt to advance a legitimate governmental interest to support the zoning ordinance. The Village admits in its brief that it enacted the ordinance to "regulate the showing of sexually explicit movies." Since its aim (and the ordinance's language) sweeps beyond unprotected obscenity, the Village's expressed aim is the suppression of speech.

The Village concedes that Westmont does not require a special use permit for any movie theatre except "adult" theatres. All other theatres operate without prior authorization. The special use requirement is, therefore, a prior restraint on speech that has as its "operative distinction" the content of the movies shown. *Genusa*, 619 F.2d at 1214. The special use mechanism is operationally similar to the licensing procedure struck down in *Genusa*. To paraphrase *Genusa*, movie theatres showing one type of films must acquire a permit before allowed to operate, movie theatres showing another type of films do not need a permit. *Id.*[6]

We doubt that any special use scheme for regulation of adult movie theatres would be constitutionally valid because of the prior restraint involved. Like the adult bookstores in *Genusa*, adult movie houses "may not . . . be singled out for special regulation unless the [Village] can demonstrate that such action is narrowly devised to further substantial and legitimate state interests unrelated to censorship or the suppression of protected expression." *Genusa*, 619 F.2d at 1214. Westmont "has come forward with no such justification," *id.* at 1214–15, and the special use ordinance is consequently invalid.

Moreover, even if the ordinance could be viewed as a means to regulate only the location of "adult" uses, the means chosen to attain this end are impermissible. The special use scheme fails the fourth test of *O'Brien* that any "incidental restriction on . . . First Amendment freedoms [be] no greater than is essential to the furtherance of the substantial governmental interest." 391 U.S. at 377, 88 S.Ct. at 1679. We upheld the simple licensing requirement in *Genusa* as incidental to the enforcement of

---

**6.** Of course, we must distinguish the type of prescreening for obscene movies approved in *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). A cursory glance reveals substantial differences between the ordinance in *Kingsley* and here. Since Westmont does not even pretend that its goal is to prevent the exhibition of only obscene movies, we need not delve into the differences. Counsel for the Village, however, would be wise to refer to *Kingsley* in drafting any new ordinance.

the distance restriction there. Issuance of a license (absent the inspection requirement struck down in *Genusa*) was automatic and occurred within a short time period. *Genusa*, 619 F.2d at 1212–13. Although the Village contends that the ordinance does not flatly prohibit adult movie theatres, the Westmont officials possess unbridled discretion to grant or deny a special use permit. In addition, the ordinance proscribes no time period at all for decisions. Instead of merely regulating location, the ordinance thus grants the Village officials power to prohibit the operation of any adult movie theatre.

In sum, the ordinance satisfies none of the requirements for constitutional regulation of "adult" fare under *Young v. American Mini Theatres* and *Genusa*. We affirm the judgment of the district court permanently enjoining its enforcement.

## IV

■ The second ordinance challenged here provides for the revocation or suspension of a movie theatre's license upon a finding of obscenity by the Movie Review Board and the Mayor. We hold that the section dealing with the finding of obscenity is constitutionally insufficient because it fails to provide sufficient procedural protection of speech. We further hold that the penalty of suspension or revocation is an unconstitutional prior restraint.

■ Obscenity is not speech protected by the Constitution. *Roth v. United States*, 354 U.S. 476, 481, 77 S.Ct. 1304, 1306, 1 L.Ed.2d 1498 (1957); *Miller v. California*, 413 U.S. 15, 36, 93 S.Ct. 2607, 2621, 37 L.Ed.2d 419 (1973). However, a municipality "is not free to adopt whatever procedures it pleases for dealing with obscenity . . . without regard to the possible consequences for constitutionally protected speech." *Marcus v. Search Warrant*, 367 U.S. 717, 731, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961). Rather, "the First Amendment requires that procedures be incorporated that 'ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line.'" *Blount v. Rizzi*, 400 U.S. 410, 416, 91 S.Ct. 423, 428, 27 L.Ed.2d 498 (1971), *quoting Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).

*Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), set down the requirements that must be met by an ordinance that purports to regulate the showing of obscene movies.

First, the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. Second, any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. Third, a prompt final judicial determination must be assured.

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 560, 95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1975), *citing Freedman v. Maryland*, 380 U.S. at 58–60, 85 S.Ct. at 738–739.

The Westmont ordinance fails to meet any of the *Freedman* requirements. Obscenity is determined solely by the Movie Review Board and the Mayor, whose decision is final. There is no provision for judicial participation at all. The ordinance does state that "[n]othing herein shall be construed as preventing or discouraging any party who claims to be aggrieved by application of this Ordinance from seeking prompt judicial review of any determination made hereunder." This section only highlights that the burden for judicial review is on the exhibitor and not on the Village. It thus violates the first and third *Freedman* standards. *Compare Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) (no restraint on the exhibition of films until after a full adversary proceeding and a final judicial determination by the Georgia Supreme Court that the materials were constitutionally unprotected) *and Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957) (praised in *Freedman v. Maryland*, 380 U.S. at 60, 85 S.Ct. at 739, as a model statute). *See also Teitel Film*

*Corp. v. Cusack,* 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968) (no provision for prompt judicial decision).

The ordinance does not contain the vice of prohibiting the showing of any particular films or restraining exhibition because the Movie Review Board reviews only "publicly exhibited" films. But the enforcement mechanism is constitutionally defective in two additional ways. First, the ordinance does not provide that any penalty be stayed pending judicial review, in violation of *Freedman.* 380 U.S. at 59, 85 S.Ct. at 739. Second, the penalty itself is unconstitutional. Upon a determination of obscenity by the Mayor, the ordinance provides for the suspension of the theatre's license for the first and second offense, and then revocation for the third offense. The ordinance thus authorizes a prior restraint against the showing of any film based solely upon an administrative determination of obscenity of past films. The penalty is precisely of the type condemned in *Near v. Minnesota,* 283 U.S. 697, 710, 713, 51 S.Ct. 625, 629, 630, 75 L.Ed. 1357 (1931) and most recently in *Vance v. Universal Amusement Co., Inc.,* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980). In *Vance,* the Court struck down a Texas statute allowing the issuance of an injunction against the operation of a theatre adjudged to be maintaining a nuisance. Another Texas statute defined the exhibition of obscene materials as a "public nuisance." The court of appeals held that

> The statutes allow the state to close, for one year, a theatre that has exhibited one obscene film. Unless a bond . . . is posted, the showing of any motion picture is punishable by contempt of court. Thus, future conduct that may fall within the purview of the first amendment is absolutely prohibited after a finding of unprotected present conduct. It was precisely this practice that was condemned by the Supreme Court in the landmark case of *Near v. Minnesota.*

*Universal Amusement Co., Inc. v. Vance,* 587 F.2d 159, 165 (5th Cir. 1978) *(en banc).* The Supreme Court affirmed, stating that the statute had the effect of authorizing "prior restraints of indefinite duration on

the exhibition of motion pictures that have not been finally adjudicated to be obscene." 445 U.S. at 316, 100 S.Ct. at 1161.

There is no principled distinction between the Westmont ordinance and the one struck down in *Vance.* Here, too, a license of a theatre may be revoked for showing films that have not been judicially ruled to be obscene. The provision for first a ninety day suspension, then a 180 day suspension, and then permanent revocation does not cure the scheme of its constitutional infirmity. No matter how long the restraint, the punishment is still the same—prohibition of "future conduct that may fall within the purview of the first amendment . . . after a finding of unprotected present conduct." 587 F.2d at 165.

The district court was therefore correct in permanently enjoining the enforcement of the Westmont ordinances.

## V

■ Plaintiff cross–appeals the district court's denial of attorneys' fees. Plaintiff seeks attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. That section provides in relevant part:

> In any action or proceeding to enforce a provision of Sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

As we recently held in *Dawson v. Pastrick,* 600 F.2d 70, 79 (7th Cir. 1979) "[a]lthough the Fees Act on its face provides that whether to award attorneys' fees is within the discretion of the court, the history of the provision makes it clear that the trial court's discretion is narrow." The Senate Report indicated that fees should only be denied when special circumstances would render an award unjust. *Id.* We concluded that "a prevailing plaintiff should receive fees almost as a matter of course." *Id.; Davis v. Murphy,* 587 F.2d 362, 364 (7th Cir. 1978); *Konczak v. Tyrrell,* 603 F.2d 13, 19 (7th Cir. 1979), *cert. denied,*

444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980).

It cannot be seriously doubted that plaintiff is the prevailing party here. Plaintiff essentially succeeded in obtaining the relief he sought in his claims on the merits, even though he did not obtain damages or a declaratory judgment. The case cannot be considered a draw. *Dawson v. Pastrick*, 600 F.2d at 79 n. 13; *Bagby v. Beal*, 606 F.2d 411, 414–15 (3d Cir. 1979). *Compare Muscare v. Quinn*, 614 F.2d 577 (7th Cir. 1980) (plaintiff prevailed on only one substantive claim) *and Roesel v. Joliet Wrought Washer Co.*, 596 F.2d 183, 187 (7th Cir. 1979) (each party prevailed on one issue; no fees awarded).

■ Nor are there any special circumstances which justify denial of an award. The defendants claim that an award of attorneys' fees would be improper here because the individual defendants have qualified immunity from liability. Defendants argue that absent "bad faith" an award against local officials is unjustified. We disagree.

Congress specifically addressed official liability for attorneys' fees in § 1988. The House Report stated

> Furthermore, while damages are theoretically available under the statutes covered by [§ 1988], it should be observed that, in some cases, immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy. Consequently, awarding counsel fees to prevailing plaintiffs in such litigation is particularly important and necessary if Federal civil and constitutional rights are to be adequately protected.

H.Rep.No. 94–1558, 94th Cong., 2nd Sess. 9 (1976).[7]

The Third Circuit recently held that this legislative history showed that Congress intended to abrogate judicial immunity in § 1988. *Morrison v. Ayoob*, 627 F.2d 669 (3d Cir. 1980). We agree, and hold that Congress also intended the abrogation of any immunity possessed by the Village officials. *Accord, Supreme Court of Virginia v. Consumers Union of the United States*, —— U.S. ——, ——, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980) (Fees Act permits fees award against state agency not immune from injunctive relief).

■ Defendants make some reference to their ability to pay a fee award. First, ability to pay is not a "special circumstance" that will bar an award of attorneys' fees to a successful plaintiff. *Bunn v. Central Realty of Louisiana*, 592 F.2d 891 (5th Cir. 1979). *Compare Brown v. Stackler*, 612 F.2d 1057 (7th Cir. 1980) (denial of fees justified where attorney submitted grossly inflated bill for "simple" case). Second, even though the Village is not a named defendant, it may be the appropriate party to pay attorneys' fees. *Hutto v. Finney*, 437 U.S. 678, 699–700 & n. 32, 98 S.Ct. 2565, 2578–2579 & n. 32, 57 L.Ed.2d 522 (1978). The legislative history of the provision indicates that Congress anticipated that the fees would be paid from the funds of the Village:

> [D]efendants in these cases are often State or local bodies or State or local officials. In such cases it is intended that the attorneys' fees, like other items of costs, will be collected either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party).

S. Report No. 1011, 94th Cong., 2d Sess. 5, reprinted in [1976] U.S.Code Cong. & Admin.News 5908, 5913. *See Skehan v. Board of Trustees of Bloomsburg State College*, 590 F.2d 470, 494–96 (3d Cir. 1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979).

Neither party had the opportunity to argue below how an appropriate award could be framed. On remand, the district court

---

**7.** A footnote in the cited paragraph contains a citation to *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967), in which the Supreme Court indicated that Congress could abrogate judicial immunity.

should weigh the various factors considered in *Hutto v. Finney*, 437 U.S. at 699, 98 S.Ct. at 2578, in determining which Village entity is responsible for the award. *See Morrison v. Ayoob*, 672 F.2d at 673.

The district court should also determine the proper amount of attorneys' fees. We recently adopted the Fifth Circuit's standard in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), for attorneys' fees awards. *Hampton v. Hanrahan*, 600 F.2d 600, 643 (7th Cir. 1979), *judgment rev'd in part*, —— U.S. ——, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), held that

> [F]actors bearing on the amount of the award will include (1) the time and labor required; (2) the novelty and difficulty of the question presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

Disciplinary Rule 2–106 of the American Bar Association Code of Professional Responsibility adopts practically identical standards. *See Muscare v. Quinn*, 614 F.2d at 579. The district court should also consider whether plaintiff is entitled to attorneys' fees for the prosecution of this appeal. *Davis v. Murphy*, 587 F.2d at 364.

We hold that the defendants are liable for attorneys' fees in their official capacities. We remand to the district court for the framing of an appropriate award. The decision of the district court is affirmed in part, reversed and remanded in part.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

