**EVANSVILLE BOOK MART, INC.,**
**Charles Chulchian**

v.

**CITY OF INDIANAPOLIS, Fred Armstrong, as Controller and Agent of the City of Indianapolis, and not Individually, et al.**

IP 79–20–C, IP 79–257–C.

United States District Court,
S. D. Indiana,
Indianapolis Division.

Sept. 21, 1979.

Richard Kammen of McClure, McClure & Kammen, Indianapolis, Ind., and Franklin I. Miroff of Ancel, Friedlander, Miroff & Ancel, Indianapolis, Ind., for plaintiffs.

City-Legal Dept., Sheila S. Suess, Corp. Counsel by Jo Ann Hoffman, Richard S. Ewing, and Charles B. Huppert, Indianapolis, Ind., for defendants.

## ORDER

STECKLER, Chief Judge.

This matter comes before the Court on plaintiff Chulchian's motion for summary judgment. Plaintiff, who is the owner and operator of the Rivoli Theatre, which displays sexually explicit motion pictures, received a letter from the City License Administrator stating that the Administrator had recommended the denial of plaintiff's 1979 theatre license because plaintiff had permitted "illegal, immoral, or obscene conduct" at the premises in violation of Indianapolis Code § 17–6(4) and because, pursuant to Indianapolis Code § 17–31(c)(6), the Administrator found plaintiff's business to be a "negative effect upon the surrounding property, residents, and inhabitants thereof." After a hearing at which plaintiff contested the denial of the license, the City Controller affirmed the findings of the License Administrator and the denial of the license. The next stage of the proceedings, a de novo hearing before the City License Review Board, has not yet taken place since the City has voluntarily stayed all further action on the license pending the outcome of this lawsuit. Plaintiff's theatre is still operating at present.

Plaintiff's complaint alleges that certain provisions of the licensing ordinance of the City of Indianapolis, under which plaintiff's theatre must be licensed, are unconstitutional because (1) they allow suspension or denial of a license based upon acts of persons frequenting the premises; (2) they give the license administrator and controller authority to consider the effect of the business upon the health, safety, and welfare of the neighborhood; and (3) they do not contain narrow, objective, and definite standards to guide the licensing authority. In addition, plaintiff alleges that city officials recommended the denial of his license because he permitted "obscene conduct," in violation of Indianapolis Code § 20–44, to occur on the theatre premises. Plaintiff contends that Indianapolis Code § 20–44 is unconstitutional under both the United States and Indiana Constitutions. Lastly, plaintiff alleges that a conspiracy exists among the defendants to deny plaintiff a license. Plaintiff prays for a judgment declaring sections of the Indianapolis Licensing Ordinance and Indianapolis Code § 20–44 unconstitutional, for a judgment expunging the evidence and findings of "obscene conduct" from the record of the licensing proceedings, and for a judgment setting aside the denial of the license and ordering the issuance of the license.

The crux of plaintiff's contention on the motion for summary judgment is that there are no questions of fact, but as a matter of law, the entire city licensing framework is unconstitutionally composed under an ordinance without proper procedures for hearing and review and without specific, defi-

nite standards to guide the licensing authorities in the grant or denial of licenses. In particular plaintiff argues that Indianapolis Code § 17–6(4), which allows for revocation of a license if a licensee permits illegal conduct on the licensed premises, is relied on improperly by the City in that the City claims that arrests made under Indianapolis Code § 20–44, which plaintiff argues is unconstitutional, constitute sufficient "illegal conduct" permitted on the premises to deny plaintiff a license. Then plaintiff contends that if the City cannot use the arrests pursuant to Indianapolis Code § 20–44 to deny plaintiff's license on the basis that he permitted illegal conduct to occur at the premises, no other definite narrow standard exists under which the City can deny a license since the only other section the City could use to deny the license allows the license administrator in his discretion to consider the effect of the premises on the surrounding neighborhood.

■ Before reaching the merits of plaintiff's contentions two matters must be considered. First, although in certain seemingly similar situations, a federal district court might feel it was compelled to consider abstaining due to considerations of comity and equity, in this case, at the hearing on the motion for summary judgment, the City indicated its desire to have the question resolved in this Court and thereby effectively waived any consideration of the doctrine of abstention by this Court. *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 480, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1976); *see also* C. Wright and A. Miller, Federal Practice and Procedure § 4252, at 547–8 (1978). In a similar vein, exhaustion of administrative remedies might in some cases be required but, again, since the City has indicated a desire to have the issue resolved, and since this is a case brought under 42 U.S.C. § 1983, such exhaustion will not be required. *Lister v. Lucey*, 575 F.2d 1325, 1331–2 (7th Cir. 1978).

■ Plaintiff's first contention, that the entire licensing framework is unconstitutional due to a lack of proper procedures for hearing and review, is without merit.

Plaintiff's argument is that the ordinance creating the License Review Board, Indianapolis Code § 17–63, *et seq.* (1970), which states that hearings are to be conducted using the procedures of the Administrative Adjudication and Court Review Act, *id.* § 17–68(c), in effect actually contains no procedures governing hearings and appeals, since plaintiff contends case law will not permit a nonstate-wide agency to adopt the procedures of the Administrative Adjudication and Court Review Act (now the Administrative Adjudicative Act, Ind. Code 4–22–1–1, *et seq.*). However, case law holds only that the Administrative Adjudication Act procedures do not automatically apply to municipal agency hearings as they would to hearings before most state agencies. *See Wolfcale v. Wells County*, Ind.App., 364 N.E.2d 1023 (1977). The case law does not state that a municipality is not permitted to adopt the procedures of the Administrative Adjudication Act or its predecessor. In fact, in certain instances courts have held that although the Administrative Adjudication Act is not expressly applicable to certain proceedings, the courts will apply its standards anyway. *Indiana Department of Public Welfare v. DeVoux*, 161 Ind.App. 40, 314 N.E.2d 79, 86 (1974).

■ Plaintiff's next major argument concerns the City's use of arrests made at the theatre under the "obscene conduct ordinance," Indianapolis Code § 20–44, which the City contends constitute "illegal conduct" permitted by plaintiff sufficient to refuse plaintiff a license pursuant to Indianapolis Code § 17–6(4). According to the affidavit of plaintiff's attorneys and the deposition of a police detective, there were nine arrests in November 1978 (approximately one and a half months before plaintiff was notified of the recommended denial of his 1979 license) pursuant to Indianapolis Code § 20–44 at plaintiff's theatre. The arrests were made following incidents in which male patrons of the theatre accosted vice squad officers and attempted to touch their genitals. Section 20–44 states:

"Any person who utters any obscene or licentious language, where there are per-

sons other than males to be offended thereby; or who applies words to the person of another, or who uses in the presence of another any opprobrious or vile epithet involving moral turpitude or profaning God, Jesus Christ or the Holy Ghost; or who by the use of profane, vile or indecent language, or loud and unusual noises, collects or causes to be collected upon any of the streets, ways or public places of the city, a crowd of three (3) or more persons; or who disturbs the peace and quiet of the city or its inhabitants by loud talking, making unusual noises or by crying any alarm without good cause, or by threatening any person, or challenging him to fight, or menacing him with physical injury or pecuniary loss; or who accosts or approaches any person of the opposite sex unknown to the person, and by word, sign or gesture attempts to speak or become acquainted with such person against his or her will in a public street or in any public place in the city, except in the transaction of legitimate business; or who attempts to entice or procure a person of the opposite or same sex to commit an unlawful act; or who accosts or approaches any person and by word, sign or gesture suggests or invites the doing of any indecent or unnatural act; shall be guilty of an offense."

Plaintiff contends that § 20–44 violates numerous provisions of the United States and Indiana Constitutions, including Art. IV §§ 22 and 23 of the Indiana Constitution which prohibits local or special laws. In *City of Indianapolis v. Sablica*, 264 Ind. 271, 342 N.E.2d 853 (1976), the court held that a city ordinance would be invalid as an attempted local law if the ordinance contradicted, duplicated, altered, amended, modified or extended the subject matter of a state statute. "The offending city ordinance need not expressly contradict or completely duplicate the state statute before it is invalid as an attempted local law." *Setser v. City of Fort Wayne*, Ind.App., 346 N.E.2d 642 (1976). Provisions of several state statutes deal with the conduct prohibited by § 20–44, including, *inter alia*, Ind. Code §§ 35–42–4–1 [rape], 35–42–4–2 [crim-

inal deviate conduct], 35–42–4–3 [child molesting], and 35–45–2–1 [intimidation]. For these reasons, the Court finds that § 20–44 is invalid as an attempted local law. Accordingly, the Court need not consider plaintiff's other contentions regarding § 20–44.

Plaintiff argues that if § 20–44 is invalid as an attempted local law, the City cannot deny him a license based on any section of the licensing ordinance basically because the ordinance as a whole contains no definite, narrow, objective standards. Sections 17–6(4) and 17–31(c)(6) are the only two sections under which the denial of plaintiff's license was recommended (Exhibit A with plaintiff's complaint) and indeed there are few additional standards for issuance or denial of licenses contained in the Code. Section 17–6(4) states:

"Every licensee, his agents and employees, shall . . . not permit any sort of illegal, immoral or obscene conduct or practices to take place on his premises or in the conduct of his business."

Section 17–31(c)(6) states:

"In the granting or denying of any license, the controller may take into consideration the effect of the proposed business or calling upon surrounding property and upon residents or inhabitants thereof; and in granting, denying or revoking said license the controller may exercise his sound discretion as to whether said license should be granted, transferred, denied or revoked."

Plaintiff contends, and the City concedes, that the words "immoral" and "obscene" in § 17–6(4) are unconstitutional in this context.

Plaintiff also contends he may not be denied a license based upon the occurrence of "illegal" activity at the theatre because this would constitute a "prior restraint" on his exercise of First Amendment freedoms and because there is not a sufficient nexus between the arrest of a patron and the operation of the theatre. The City agrees that it could not deny a license based upon a theatre owner's prior obscenity conviction,

but argues that if other illegal conduct occurs on the premises, it may deny a license if it does so as a part of a reasonable regulation directed not at the "expressive conduct" but rather at other conduct with which it may be concerned.

In *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the Court held that a city could regulate First Amendment protected activities by means of zoning or licensing ordinances. *Id.*, at 62, 96 S.Ct. 2440. In *Young*, the zoning ordinance upheld was not "content neutral" since it regulated the location of adult motion picture theatres in relation to other "regulated uses" (businesses the city found contributed to urban decay). Even though the ordinance was not "content neutral," the Court found that there would be no significant restriction of access to such theatres and that the city's interest in preventing urban decay was a legitimate purpose for the regulation of location of the theatres. *Id.*

■ In the present case, § 17–6(4) allowing the denial of a license to a person who permits illegal conduct to occur at his business premises, as limited by the City's recognition that it cannot use prior convictions of the owner for showing obscene films, *see, e. g., Natco Theatres, Inc. v. Ratner*, 463 F.Supp. 1124 at 1130–31 (S.D.N.Y.1979), must be upheld because it is content neutral in that it does not single out adult theatres, and is the expression of an equally legitimate City concern, the City's interest in preventing the licensing of businesses the owners of which permit illegal occurrences. *See Borrago v. City of Louisville*, 456 F.Supp. 30, 31–2 (W.D.Ky.1978) [ordinance allowed denial of license to person who committed crime of moral turpitude or if such crimes were committed on the premises]; *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) [ordinance against disruptive noise near school]; *Sunset Amusement Co. v. Board of Police Commissioners*, 7 Cal.3d 64, 101 Cal. Rptr. 768, 496 P.2d 840 (1972) [affirmed denial of license to roller skating rink because owners permitted disruptive behavior

to occur]. Due to the striking down of § 20–44 (the "obscene conduct" ordinance), this Court does not have before it documentation of arrests under valid statutes so as to enable it to consider the question of the denial of the license based on § 17–6(4) for permitting illegal conduct to occur on the premises. Counsel for the City informally indicated at the hearing on the motion for summary judgment that other arrests for violations of valid state statutes had been made recently at the theatre. If so, there may be a valid legal basis on which a license may be denied.

■ Plaintiff's last major argument is that the licensing ordinance is unconstitutional because it lacks narrow, definite, objective standards to guide the licensing authorities, in particular because it allows the controller to consider the effect of the business on surrounding property and residents and to exercise "his sound discretion" to grant or deny a license. Indianapolis Code § 17–31(c)(6). While the City may legitimately be concerned with the effect of a business on its surroundings, *Young, supra; Borrago, supra,* the Court agrees that § 17–31(c)(6), as it is worded, does not contain adequate guidelines and gives the controller almost unlimited discretion regarding the grant or denial of a license. Many courts have held ordinances with similar language unconstitutional because the officials charged with administering them were vested with unfettered discretion. For example, in *Grandco Corp. v. Rochford*, 536 F.2d 197, 206 (7th Cir. 1976), an ordinance allowing the mayor to revoke a license for "good and sufficient cause" was stricken. An ordinance allowing a commissioner in his discretion to consider the "welfare and benefit of the people of and visitors to the city" was declared unconstitutional in *414 Theatre Corp. v. Murphy*, 360 F.Supp. 34 (S.D.N.Y.1973). Similarly, an ordinance giving a commissioner the authority to pass on the character of applicants for licenses and to consider "morality, decency, or public welfare" was invalidated in *Avon 42nd Street Corp. v. Myerson*, 352 F.Supp. 994, 1000 (S.D.N.Y.1972). For these reasons, § 17–31(c)(6) is unconstitutional.

By reason of the foregoing, the Court having determined there is no genuine issue of material fact, GRANTS plaintiff's motion for summary judgment and declares that:

    (1) § 20–44 is pre-empted by state statutes;

    (2) § 17–31(c)(6) is unconstitutional due to its lack of guiding standards for the licensing officials;

    (3) § 17–6(4) is invalid, as agreed by the City, in so far as it contains the words "immoral" and "obscene"; and

    (4) § 17–6(4) is valid and constitutional in so far as it allows the City to deny a license where the owner of premises permits illegal conduct thereon as defined by a valid state statute.

Plaintiff's request that the Court order the evidence concerning the arrests made under § 20–44 expunged from the record before the licensing authorities is DENIED. Plaintiff's request that the Court order the City to issue plaintiff a license is DENIED. Instead, the hearing before the License Review Board, which the City voluntarily stayed pending the outcome of these proceedings, should now go forward.

IT IS SO ORDERED.