Charles CHULCHIAN,
Plaintiff–Appellant,

v.

CITY OF INDIANAPOLIS et al.,
Defendants–Appellees.

No. 79–2232.

United States Court of Appeals,
Seventh Circuit.

Argued April 28, 1980.

Decided Oct. 6, 1980.

Richard Kammen, Indianapolis, Ind., for plaintiff–appellant.

JoAnn Hoffman, Indianapolis, Ind., for defendants–appellees.

Before FAIRCHILD, Chief Circuit Judge, BAUER, Circuit Judge, and GRANT, Senior District Judge.*

BAUER, Circuit Judge.

The issue here is the validity of the general business licensing ordinance of the City of Indianapolis under the First Amendment, as applied to the States by the Fourteenth Amendment. Plaintiff–appellant Charles Chulchian was denied a license to operate a movie theatre under the ordinance. He appeals that part of the district court's order which upheld certain sections of the ordinance. We affirm the district court's order.

## I.

The City of Indianapolis, defendant–appellee here, requires the annual licensing of all businesses in the City.[1] Regulations is-

---

* The Honorable Robert A. Grant, Senior Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

1. Pertinent sections of the ordinance provide:
   Sec. 17–1. Definitions.
   As used in this chapter, the following terms shall have the meanings ascribed to them in this section:

   *Business* shall mean and include all kinds of vocations, occupations, professions, enterprises, establishments and all other kinds of activities and matters, together with all devices, vehicles and appurtenances used therein, which are conducted directly or indirectly, on any premises in this city or anywhere else within the jurisdiction of the city.
   
   *    *    *    *    *    *
   
   *License* shall mean and include the word "permit" and shall mean the privilege of

sued pursuant to the licensing ordinance designate a license administrator as the first level of review. If an application for a license is denied, the applicant is entitled to a hearing before the controller.[2] If the controller also denies the application, the applicant may then appeal to a license review board, whose decision is final.[3]

Plaintiff–appellant Charles Chulchian operates the Rivoli Theater, a movie theatre in Indianapolis, Indiana. The theatre exhibits sexually explicit films. In years prior to 1979, Chulchian sought and obtained a license from the City. Chulchian's application for his 1979 license, however, was denied first by the license administrator and, after a hearing, by the controller. Both the administrator and the controller stated two reasons for refusing Chulchian's license. Both stated that Chulchian violated section 17–6(4) of the ordinance because there were at least ten arrests on the premises for

"illegal, immoral or obscene conduct." Second, they stated that the "residents of the area consider the Rivoli 'to create a nuisance,'" in violation of section 17–6(2).[4] Chulchian then filed this suit, attacking the constitutionality of the licensing ordinance and seeking declaratory and injunctive relief under 42 U.S.C. § 1983. The License Review Board voluntarily stayed its consideration of Chulchian's appeal pending the court's decision.

On Chulchian's motion for summary judgment, the district court ruled that certain sections of the licensing ordinance were unconstitutional. *Evansville Book Mart, Inc. v. City of Indianapolis*, 477 F.Supp. 128 (S.D.Ind.1979). The court first reviewed the arrests constituting the "illegal, immoral or obscene conduct" allegedly permitted by appellant. The arrests were made pursuant to Indianapolis Code § 20–44, the "obscene conduct ordinance."[5] Without

---

carrying on a specified business within the city; however, both permits and licenses may be granted where specifically authorized under this Code.

*Licensee* shall include the word "permittee" and shall mean the person to whom a license has been granted and his agents and employees.

*Premises* shall include all lands, structures, places, the equipment and appurtenances connected with or used in any business, and also any personal property which is either affixed to or is otherwise used in connection with any business.

*Public welfare* shall mean the prosperity, well–being and convenience of the inhabitants of the city, either as a whole or in some limited group.

Sec. 17–2. Purpose of this chapter.

It is the purpose of this chapter to license certain business activities for the purpose of protecting the public welfare and, in order to achieve this objective, the provisions of this chapter should be liberally construed to that end.

\* \* \* \* \* \*

Sec. 17–25. When license is required.

It shall be unlawful for any person, either directly or indirectly, to conduct or maintain any business or premises for which a license is required by this Code or other ordinance, unless a valid license has been obtained therefor from the controller and kept in effect at all times. No person shall operate or permit the operation for him of any business when his license therefor has been suspended, revoked or expired.

Code of Indianapolis §§ 17–1, –2, –25.

2. Code of Indianapolis § 17–31(3)–(5). *See* notes 7, 8 *infra*.

3. Code of Indianapolis § 17–68.

4. The ordinance provides:

Sec. 17–6. General duties of licensees.

Every licensee, his agents and employees, shall:

(1) Permit inspections of his business and premises by public authorities acting pursuant to law;

(2) Conduct his business and premises in such a manner as not to create a nuisance or any sort of hazard to the public;

(3) Keep the premises clean and free from any sort of rubbish or combustible or explosive material;

(4) Not permit any sort of illegal, immoral or obscene conduct or practices to take place on his premises or in the conduct of his business.

5. Section 20–44, Code of Indianapolis, states:

Any person who utters any obscene or licentious language, where there are persons other than males to be offended thereby; or who applies words to the person of another, or who uses in the presence of another any opprobrious or vile epithet involving moral turpitude or profaning God, Jesus Christ or the Holy Ghost; or who by the use of profane, vile or indecent language, or loud and unusual noises, collects or causes to be col-

ruling on the ordinance's constitutionality, the court held it invalid under Indiana law as an attempted local law. *Id.* at 131.

The court next considered Chulchian's challenges to the two sections on which the controller based denial of his license. The court struck down section 17–31(c)(6) of the ordinance, which permits the controller

> to take into consideration the effect of the proposed business or calling upon surrounding property and upon residents or inhabitants thereof; and in granting, denying or revoking said license the controller may exercise his sound discretion as to whether said license should be granted, transferred, denied or revoked.

Code of Indianapolis § 17–31(c)(6). The court held the section "unconstitutional due to its lack of guiding standards for the licensing officials." 477 F.Supp. at 132–33.

The second section provides that a licensee shall "[n]ot permit any sort of illegal, immoral or obscene conduct or practices to take place on his premises or in the conduct of his business." Code of Indianapolis § 17–6(4). The City conceded, and the court ruled, that the use of the words "immoral" and "obscene" was unconstitutional. 477 F.Supp. at 131. The court upheld the rest of the ordinance "because it is content neutral in that it does not single out adult theatres, and is the expression of an equally legitimate City concern, the City's interest in preventing the licensing of businesses the owners of which permit illegal occurrences." *Id.* at 132. The court ruled that the City may constitutionally deny a license on the basis of illegal conduct other than prior convictions for showing obscene films. The court stated that it did not "have before it documentation of arrests under valid statutes." *Id.* The court nevertheless denied

appellant's request to order the issuance of a license because of representations by the City that "other arrests for violations of valid state statutes had been made recently at the theatre." *Id.* The court also upheld as constitutionally sufficient the procedures governing the decision of the controller and the License Review Board. *Id.* at 130.

Chulchian appeals, first, the district court's order upholding the "permitting illegal conduct" portion of section 17–6(4); second, the court's ruling upholding the constitutionality of the procedures governing the controller's decision of the License Review Board; and third, the court's refusal to order the City to issue him a license.

## II.

At the outset, we must resolve the procedural posture of this suit. A license to do business in Indianapolis is effective for only one year. We did not hear oral argument until April 1980, after appellant's 1979 license would have expired. The License Review Board, which had agreed to stay consideration of appellant's appeal until this court rendered its decision, dismissed Chulchian's appeal. The present appeal is not moot, however, because appellant's application for a 1980 license has also been denied.

■ The License Administrator denied appellant's application on the grounds that his 1979 license had been denied and that under section 17–6(2) the operation of his business constituted a nuisance. These reasons are substantially the same as those advanced to deny appellant's 1979 license. We therefore consider the merits of appellant's case as a situation " 'capable of repetition, yet evading review.' " *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35

---

lected upon any of the streets, ways or public places of the city, a crowd of three (3) or more persons; or who disturbs the peace and quiet of the city or its inhabitants by loud talking, making unusual noises or by crying any alarm without good cause, or by threatening any person, or challenging him to fight, or menacing him with physical injury or pecuniary loss; or who accosts or approaches any person of the opposite sex unknown to the person, and by word, sign or gesture attempts to speak or become acquainted with such person against his or her will in a public street or in any public place in the city, except in the transaction of legitimate business; or who attempts to entice or procure a person of the opposite or same sex to commit an unlawful act; or who accosts or approaches any person and by word, sign or gesture suggests or invites the doing of an indecent or unnatural act; shall be guilty of an offense.

L.Ed.2d 147 (1973), *quoting Southern Pacific Terminal Co. v. I.C.C.*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

### III.

#### A.

The district court's decision striking the words "obscene" and "immoral" from section 17–6(4) is not challenged by the parties. As construed by the district court, the section now reads that a licensee "shall not permit any sort of illegal conduct or practices to take place . . . ." Appellant argues that the ordinance is unconstitutionally vague because "permit" is undefined and because the type of illegal conduct which will justify denial is not specified.

■ Although the ordinance has not been authoritatively construed by the Indiana courts, the body charged with its enforcement, the City, has provided a narrowing construction of the statute. *See Law Students Civil Rights Research Council, Inc. v. Wadmond,* 401 U.S. 154, 162–63, 91 S.Ct. 720, 726, 27 L.Ed.2d 749 (1971). The City first concedes that it cannot deny a license based on conduct beyond the licensee's control. The City acknowledges that section 17–6(4) requires knowledge of the illegal conduct by the licensee. We agree that such a construction sufficiently clarifies "permit."

■ We also agree that the ordinance has standards for its enforcement. The ordinance prohibits a licensee from knowingly allowing any illegal activity, *i. e.,* any violation of law. It is hornbook law that all persons are deemed to have notice of the law. Other laws which similarly impose liability for violations of law have been upheld from vagueness attacks. *See, e. g., United States v. Polizzi,* 500 F.2d 856, 874–75 (9th Cir. 1974), *cert. denied,* 419 U.S. 1121, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975). (Interstate Travel Act.) *Compare Entertainment Concepts, Inc., III v. Maciejewski,* 631 F.2d 497 (7th Cir. 1980) (no definition of "adult" in zoning ordinance). While the ordinance grants discretion to the controller and the License Review Board to consider

the quantity and quality of illegal conduct, it is not vague.

Chulchian next challenges section 17–6(4) as an impermissible regulation of his movie theatre. Chulchian asserts that the ordinance impermissibly treads on constitutionally protected speech because it authorizes the closing of his theatre if he permits illegal conduct. We disagree.

■■ Businesses which deal in material protected by the First Amendment, for example bookstores and theatres, are not immune from all regulation. They can be subject to the usual panoply of health, safety, licensing, and zoning regulations as all other businesses. *See Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 62, 79, 96 S.Ct. 2440, 2448, 2456, 49 L.Ed.2d 310 (Powell, J., concurring) (1976); *Genusa v. City of Peoria,* 619 F.2d 1203, 1214, 1218 (7th Cir. 1980). Enforcement of the ordinance here, however, implicates First Amendment rights. The four part test of *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), therefore governs our review. Under that test, a governmental regulation is justified, despite its incidental impact on speech,

> if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 377, 88 S.Ct. at 1679. We hold that section 17–6(4), as now construed, meets all these requirements. Consequently, we hold that enforcement of the ordinance by denial of a license is constitutional.

First, the section applies to all businesses in Indianapolis. Although it covers theatres, it does not regulate them based on content. *Compare Entertainment Concepts, Inc., III v. Maciejewski; Genusa v. City of Peoria.* The Indianapolis provision is typical of many municipal licensing ordinances which hold the operator responsible

for conduct on the premises. *See, e. g., James Bakalis & Nickie Bakalis, Inc. v. Simonson*, 434 F.2d 515, 519 (D.C.Cir.1970) (liquor license ordinance).

■ The district court held the ordinance valid as fulfilling "the City's interest in preventing the licensing of businesses the owners of which permit illegal occurrences." 477 F.Supp. at 132. The ordinance serves the dual goal of encouraging business responsibility and protecting patrons who frequent the premises. The City may reasonably desire to protect the health, safety, and welfare of patrons of business from illegal conduct, and the City's interest may properly extend beyond health and safety laws. *Ralston v. Ryan*, 217 Ind. 482, 29 N.E.2d 202 (1940).

■ The ordinance furthers this interest. First, the illegal conduct must occur on the premises where it is likely to affect the patrons. Next, because of the knowledge requirement, the ordinance does not penalize a licensee for an isolated incident over which he has no control. The ordinance therefore furthers a legitimate and substantial governmental interest that is unrelated to the suppression of free expression. *United States v. O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679.

The ordinance here is distinguishable from an ordinance forbidding licensing of an applicant who has been convicted of certain crimes. *See, e. g., Genusa v. City of Peoria*, 619 F.2d at 1218–19. Such regulations offend two constitutional values–they first deny a certain class of people the opportunity to exercise First Amendment rights; second, they have not been shown to further any legitimate state interest. *Id.* A licensee's conduct off the premises may or may not be related to the conduct of his business. In addition, the "criminal convictions" type of statute invariably penalizes the licensee for prior conduct which again may or may not be related to his present conduct of his business. The Indianapolis ordinance, in contrast, holds a licensee responsible only for present conduct on the premises.[6]

■ Finally, the means chosen are limited so as not to trample on protected expression. *United States v. O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679. The ordinance, as we have construed it, requires that a licensee knowingly permit illegal conduct. The City conceded that it cannot use obscenity convictions to justify denial of a license. *See Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980). The City acknowledged in oral argument that it bears the burden to prove knowledge, so that a licensee does not act at his peril. The City also indicated that it would not deny a license because of an isolated incident, but would require a pattern of arrests. The discretion granted under the ordinance is therefore not boundless. As construed by Judge Steckler and this opinion, the provision is constitutional on its face.

---

**6.** We briefly considered a similar ordinance in *Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980). The Peoria ordinance required "that no licensee or person associated with a licensee shall permit anything to occur on licensed premises that is in any manner unlawful." *Id.* at 1221 (footnote omitted). We held, "[o]n the assumption that Peoria does not mean by this provision to enlarge the licensee's vicarious criminal liability beyond traditional bounds, we see no problem with the provision. As we construe it, it is merely a legal redundancy." *Id.*

Appellant's counsel interprets *Genusa* to mean that the ordinance makes the licensee responsible only for conduct sufficient to hold the licensee liable as a conspirator, accessory, or aider and abettor. We do not think that *Genusa* intended to define the kinds of conduct for which permits can be revoked by the criminality of the licensee. Were that the case, the provision would run smack into the court's holding striking down the "criminal convictions" provision. *Id.* at 1218–19. Since the City cannot legitimately deny a license to a person convicted of a crime, it hardly seems logical to allow the City to deny a license to persons who conspire with or aid criminals. Under the interpretation pressed by appellant, the provisions would not be a "legal redundancy," *id.* at 1221, but a legal nullity. We think that *Genusa* simply meant that the ordinance could not create a new level of vicarious *criminal* responsibility. We do think that it is more than a "legal redundancy," however, because it creates a potential civil liability.

### B.

The scope of our review of the procedures contained in the Indianapolis licensing ordinance has been narrowed considerably due to several concessions by the City in its brief and oral argument. The City first concedes that the applicant must show only that he is generally qualified for a license under sections 17–31(c) and 17–29.[7] *Cf. Indiana State Bd. of Registration v. Cummings*, 387 N.E.2d 491, 494 (Ind.App.1979) (applicant for health facility administrator's license must make prima facie showing of qualifications). Once he has demonstrated that he has the qualifications listed in section 17–29, the burden "shifts to the agency before whom the application is pending [to] present evidence to the contrary." Appellee's Brief at 7. The City further concedes that if the City fails to present sufficient contrary evidence the controller must issue the license.[8]

▮ Two of appellant's contentions remain after the City's concessions. First, Chulchian argues that the provision for a trial *de novo* in which the City is free to assert new grounds to support its decision is improper. We disagree.

The Board conducts its proceedings pursuant to the Indiana Administrative Adjudication and Court Review Act. Code of Indianapolis § 17–38(c). Indiana law provides that a hearing by a full administrative board governed by that Act may be *de novo*. Indiana cases have determined that the procedure comports with due process because the parties are afforded notice and an opportunity to prepare. *Warren v. Indiana Telephone Co.*, 217 Ind. 93, 26 N.E.2d 399, 409 (1940).

▮ Finally, we reject Chulchian's assertion that no standards govern the decision of the License Review Board. The Board must follow the requirements in the

---

7. Section 17–31(c)(3) provides in pertinent part:

(3) Before issuing or renewing a license, the controller may institute an investigation to determine the qualifications of the applicant or the surety, if a bond is required. Each applicant for a license or the renewal of a license shall have the burden of proving that he is qualified and is entitled to a hearing before the controller, or someone appointed by the controller, to present evidence as to his qualifications. Each applicant for a license or a surety on a bond may be required by the controller to submit evidence under oath or in the form of an affidavit.

Section 17–29 provides:

General qualifications of licensees.

In order to obtain any license required by this Code or other city ordinance, the applicant shall meet the following requirements: (1) The applicant must be a citizen of the United States or a declarant for citizenship, as prescribed by law; (2) The applicant must not have had any license to operate a business revoked or suspended because of his conduct of the business or because of his violation of any law or regulation while conducting that business; (3) The applicant must agree to comply with all laws, provisions of this Code and other ordinances, all regulations promulgated thereunder and the orders and decisions of all public officials which pertain to his business or premises; he shall also agree that his business and premises will not be used for any unlawful or immoral purposes;

(4) Each corporation must be organized and controlled by the laws of the state or be authorized and qualified by its laws to engage in business in the state.

The qualifications required in section 17–29 are of the general type approved by *Genusa v. City of Peoria*, 619 F.2d at 1215. We presume that the City will read the word "immoral" out of section 17–29(3), as it has conceded its use is unconstitutional in section 17–6(4). *Supra* at 31.

8. Sections 17–31(c)(4) and (5) provide:

(4) If the controller finds an applicant qualified to receive the license for which he has applied, he shall issue the license with his official seal affixed after all license fees have been paid to him, and shall deposit them in the city general fund. All bonds required to be posted in connection with any license shall be approved by the controller as to the surety thereon, and shall be filed with the controller prior to the issuance of the license.

(5) If any license or permit is refused by the controller, the reasons for the refusal shall be stated in writing and delivered to the applicant upon his request; and, if the applicant remedies the reasons for the refusal and becomes qualified for the license or permit, and such facts are presented to the controller and found by him to be correct, the license or permit shall then be issued.

Counsel for the City stated in oral argument that the language in sections (4) and (5) is mandatory in nature.

Licensing Ordinance. The Chairman of the License Review Board testified that the Board also refers to applicable Indiana law and court decisions in making a judgment. We conclude that on their face, the procedures of the License Review Board comport with due process. Any charge that the Board has acted arbitrarily or otherwise in violation of appellant's constitutional rights will have to await action by the Board.

### C.

We must now consider the current status of appellant's application. The proceedings on Chulchian's 1979 application were dismissed and further action on his 1980 application was stayed pending our decision. The License Administrator, however, denied Chulchian's 1980 application on the basis of the denial of his 1979 license. Counsel for the City admitted that it denied Chulchian's 1979 license because of violations of the obscene conduct ordinance struck down by Judge Steckler. Contrary to the City's assertion in brief, the judge also invalidated the finding that Chulchian's business was a nuisance since the controller based his determination on community opinion. 477 F.Supp. at 132. Judge Steckler was assured that there were other valid arrests sufficient to justify denial. But because the 1979 proceedings were dismissed, the License Review Board never had the opportunity to consider whether other arrests justified denial of Chulchian's 1979 license. We must assume therefore that at least for purposes of the 1979 license, the City failed to meet its burden that Chulchian was not qualified for a license. The 1979 license was therefore wrongfully withheld, and it is not permissible to base a further denial on the 1979 proceedings.

We cannot order the City to issue a license because the administrative process is not complete. *See Indiana State Bd. of Registration v. Cummings*, 387 N.E.2d at 497. We note, however, that the License Administrator also denied Chulchian's 1980 application because he "conducted [his] business and premises in such a manner as to create a nuisance to the public" in violation of section 17–6(2). While we have grave reservations about its validity on vagueness and overbreadth grounds, *see generally*, Rendleman, *Civilizing Pornography: The Case For an Exclusive Obscenity Nuisance Statute*, 44 U.Chi.L.Rev. 509 (1977), the lower court did not rule on the section's constitutionality. We therefore do not consider it here.

We affirm the order of the district court.