IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 93-4631

---

TK'S VIDEO, INC.,

                                        Plaintiff-Appellant,

versus

DENTON COUNTY, TEXAS,

                                        Defendant-Appellee.

*************************************************************

---

93-5234

---

TK'S VIDEO, INC.,

                                        Plaintiff-Appellee,

versus

DENTON COUNTY, TEXAS,

                                        Defendant-Appellant.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

(June 20, 1994)

Before GOLDBERG, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

   TK's Video, Inc., an adult book and video store, sued Denton County, Texas, contending its licensing requirements for "adult" businesses violate the First and Fourteenth Amendments.[1]  The district court held several licensing requirements

---

[1]This Order of Denton County is attached as Appendix A.

unconstitutional, severed them, upheld the others, and awarded attorney's fees. Both TK's and Denton County appealed. We reject contentions that the County's licensing scheme was impermissibly broad and failed to provide adequate procedural protection, including judicial review. We affirm except in one particular. We find that the County regulation fails to assure maintenance of the status quo while processing an application for a license by a business existing when the County adopted its regulation.

## I.

Erotic nonobscene printed matter, films, and live entertainment are sheltered by the First Amendment, Mitchell v. Commission on Adult Entertainment Establishments, 10 F.3d 123, 130 (3rd Cir. 1993), but enjoy less protection than some other forms of speech such as political speech. Young v. American Mini Theatres, Inc., 427 U.S. 50, 70 (1976). There is no contention that TK's sells obscene pornographic material. Rather, TK's is regulated as an adult book and video store.

We distinguish between regulating the content and regulating the consequence of protected activity. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46-48 (1986). A content-neutral time, place, or manner restriction must (1) be justified without reference to the content of the regulated speech; (2) be narrowly tailored to serve a significant or substantial governmental interest; and (3) preserve ample alternative means of communication. Id.

Under the first City of Renton factor, the Denton County order must justify its restrictions by reference to effects attending the regulated speech.  The order, by its own terms, combats pernicious side effects of adult businesses such as prostitution, disease, street crime, and urban blight.   It does not censor, prevent entrepreneurs from marketing, or impede customers from obtaining communicative material.  The County's regulation does not on its face regulate content.  Rather, the regulation is aimed at the impact on the surrounding community.  But there are also procedural limits to regulating even at this lesser level of protection.

In FW/PBS, Inc. v. City of Dallas, 493 U.S. 215 (1990), Justice O'Connor, writing for Justices Stevens and Kennedy, and joined in the judgment by Justices Brennan, Marshall, and Blackmun, stated that content-neutral regulations contain adequate procedural safeguards when (1) any prior restraint before judicial review of the licensing process is for a specified brief period during which the status quo is maintained; and (2) there is prompt judicial review after denial of a license.

## II.

TK's first charges that the Denton County order, which provides that a county official shall issue an operating license within 60 days after receiving the application unless he discovers one of several disqualifying facts, fails to provide adequate procedural safeguards.[2]  TK's argues that the county must have a

_____

[2]The Order provides that "[a]ll decisions of the county director of public works become final within thirty (30) days." No one contends that this provision prevents an immediate appeal

3

deadline shorter than 60 days and that it must not interfere with normal business operation during the application process.

Under FW/PBS, the County must ensure that any restraint before judicial review is limited to a specified brief period. In Teitel Film Corp. v. Cusack, 390 U.S. 139, 141 (1967) (per curiam), the Supreme Court found that 50 to 57 days is not a specified brief period. It is true that Denton County's order placed a 60-day limit on licensing procedures after receipt of an application. But the regulation in Teitel was content-based. The ordinance in Teitel also required administrators to review films before they could be shown, a relatively easy task compared to licensing adult businesses and the people who run them. Licensing entails reviewing applications, performing background checks, making identification cards, and policing design, layout, and zoning arrangements. We are persuaded that Denton County's order creates less of a danger to free speech and requires a more time-consuming inquiry than screening movies. We conclude that here 60 days for acting on license applications imposes no undue burden.

TK's also urges that the regulation is invalid for a related reason. It urges that Denton County fails to assure maintenance of the status quo. The contention is that the County cannot constitutionally shut down an existing business while its application for a license is pending and that TK's was operating when Denton County adopted its regulation. The County points out

of a denial of license to the district court of Denton County. We read this language as setting a time within which an appeal must be lodged.

that it has not attempted to close TK's; that because its regulation is content- neutral, it is not obligated to refrain from regulation during the licensing period. The district court rejected TK's contention concluding that interim regulation is implicit in a valid period for issuing a license. This is true as far as it goes, but it is qualified by the further limit that the County must maintain the status quo. We agree that an applicant for a license not in business when the Order was adopted is not free to operate while its license is pending.

Maintaining the status quo means in our view that the County cannot regulate an existing business during the licensing process. It is no answer that the County has not elected to do so. The absence of constraint internal to the regulation is no more than open ended licensing. Businesses engaged in activity protected by the First Amendment are entitled to more than the grace of the State.

The regulating order does not address the problem. The order maintains the status quo pending judicial review for licensees facing suspension or revocation. An applicant denied a license has a right to de novo review by the state district court and, by the terms of the Order, filing an appeal stays a Decision of the Director of Public Works in suspending or revoking a license until final decision by the state district court. Because TK's was in business when the Order was adopted, its free speech activity cannot be suppressed pending review of its license application by the County.

5

TK's also contends that the Order is deficient in failing to provide an automatic stay pending appeal of an administrative decision denying an application for a license. This argument is in essence a twin of the contention that the status quo must be maintained. We have concluded that the County cannot alter the status quo during the licensing process. There is then nothing to stay except a denial of a license. Stated another way, the issue is whether a business must be allowed to commence operation without a license during judicial review. Here we agree with the district court that a valid time period within which the County can act carries the implicit rejection of such required interim licensing. Nor is this unduly restrictive, given the availability of expeditious judicial review. A rejected license applicant has thirty days to seek judicial relief before the order of the Director of Public Works becomes final. <u>National Socialist Party v. Village of Skokie</u>, 432 U.S. 43, 44 (1977).

This does not answer the further question of how much of the total licensing process must be complete within the specified brief period, specifically whether the brief period includes completion of judicial review. Despite contrary suggestions in Justice Brennan's opinion in <u>FW/PBS, Inc.</u> and some uncertainty in the language of Justice O'Connor's opinion in the same case, we read the Supreme Court to insist that the state must offer a fair opportunity to complete the administrative process and access the courts within a brief period. A "brief period" within which all judicial avenues are exhausted would be an oxymoron.

6

TK's objects that the order does not provide automatic and prompt judicial review, or an automatic stay of an order denying a license. As we explained, the Order provides that filing a notice of appeal to the state district court of Denton County stays an administrative decision revoking or suspending a license. So the focus of TK's contention is on the absence of a stay of an order denying a license. FW/PBS requires only a prompt judicial hearing, a standard that the order meets by giving an unsuccessful license applicant 30 days to appeal to a district court in Denton County "on a trial de novo basis." The availability of expeditious judicial review obviates the need for an automatic stay. National Socialist Party v. Village of Skokie, 432 U.S. 43, 44 (1977).

## III.

### A.

TK's urges that the County's list of persons associated with its business who must be licensed is impermissibly broad. Denton County required a license from numerous persons associated with adult businesses. The district court, however, struck down licensing requirements for stockholders, limited partners, equity holders and their employees, and property owners and equity holders associated with adult businesses from the regulation. This exclusion is not at issue and the regulation now extends only to owners, clerks, and employees of adult businesses, corporations or directors of adult businesses and their employees, and partners in adult businesses and their employees.

7

Under the licensing provision the County Director of Public Works must approve a license unless he finds an enumerated disqualifying factor such as a prior adult business regulatory violation or a conviction for a certain sexual offense.

Licensing clerks and employees ensures that only persons who satisfy basic legal and hygienic standards work in adult businesses. The County also requires that all adult business employees wear an identification card at work. The County says that this requirement permits it to monitor the work force of adult businesses and to ensure that only duly authorized adults work in these enterprises.

While corporations reasonably may be obliged to submit detailed business information to obtain a license, the requirement that owners and employees disclose personal information to County officials is more burdensome. The Denton County order requires owners and employees to disclose only their age, recent infractions of certain adult business regulations, and recent convictions for certain sexual offenses. The County says that their information assists in making background checks and preparing identification cards.

Compelled content-neutral disclosure of owner and employee information can chill protected expression. See Talley v. California, 362 U.S. 60, 64 (1960); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 461-62 (1958). This chill could occur even if suppressing particular expression is unintended. NAACP, 357 U.S. at 461. We insist that countervailing state interests

8

must further a substantial government interest. <u>Buckley v. Valeo</u>, 424 U.S. 1, 64 (1975) (per curiam). This protective skirt requires a "relevant correlation" or "substantial relation" between the information required and the government interest. <u>Id.</u>

We are persuaded that requiring owners and employees to supply information about their age and certain prior regulatory infractions and sexual offenses substantially relates to the substantial government interest of curtailing pernicious side effects of adult businesses. The Denton County order does not demand comprehensive disclosure of personal information, but only information reflecting ability to function responsibly in the adult business setting.

The Seventh and Ninth Circuits have invalidated disclosure requirements. In <u>Genusa v. City of Peoria</u>, 619 F.2d 1203 (7th Cir. 1980), the court invalidated the required disclosure of past aliases, criminal convictions, and ordinance violations as unrelated to the city's stated goal of preventing adult businesses from congregating in one location. <u>Id.</u> at 1215-19.

In <u>Acorn Investments, Inc. v. City of Seattle</u>, 887 F.2d 219, 224-26 (9th Cir. 1989), the court invalidated a shareholder disclosure rule. The city wanted to use the information to notify shareholders of ordinance requirements and to hold them legally responsible for violations, although officers and directors, not shareholders, have legal responsibility for businesses. The court found no logical connection between the shareholder disclosure rule and the stated purpose for the information. <u>Id.</u> at 226.

9

Genusa and Acorn are not apposite.  The Denton County order outlines the ambitious agenda of curtailing negative side effects not simply of clusters of adult businesses, but of each adult business.  Disclosure of owner and employee personal history might not be tailored to locating adult businesses, but it does monitor persons with a history of regulatory violations or sexual misconduct who would manage or work in them.  These histories are plainly correlated with the side effects that can attend these businesses, the regulation of which was the legislative objective.  In more legalistic and abstract terms, ends and means are substantially related.  Insisting on this fit of ends and means both assures a level of scrutiny appropriate to the protected character of the activities and sluices regulation away from content, training it on business offal.

B.

An applicant requesting a license must post a sign on the business premises disclosing his request.  An applicant must also disclose his request by advertising in local newspapers.  The district court upheld these disclosure requirements, while striking down a requirement requiring applicants to notify property owners within a specified radius of the proposed enterprise.

The two notice provisions that survived challenge in the district court ensure that potential neighbors know about the impending arrival of adult businesses. Notice to others of pending zoning regulation is supported by a substantial state interest, serving the practical role of allowing effected persons an

10

opportunity to examine the request and test its accuracy. These notice requirements are not onerous. Nor are they disguised censorship. Rather, they are typical of notices routinely required in zoning regulations. We are persuaded that the notice requirements are sufficiently tailored to the regulatory objective.

C.

Government cannot tax First Amendment rights, but it can exact narrowly tailored fees to defray administrative cost of regulation. Cox v. New Hampshire, 312 U.S. 569, 576-77 (1941). Denton County requires each business and individual requesting a license to pay annual fees of $500 and $50, respectively. The district court found these amounts tied to the cost of investigating applicants and processing licenses. We agree.

D.

We have upheld design and layout regulations for adult film and video theaters. See FW/PBS, Inc. v. City of Dallas, 837 F.2d 1298, 1304 (5th Cir. 1988), aff'd in part, rev'd in part, vacated in part, 493 U.S. 215 (1990). The Denton County order contains specifications identical to those previously upheld. Completely private and poorly lit viewing booths encourage illegal and unsanitary sexual activity in adult theatres. See FW/PBS 837 F.2d at 1304. The design and layout regulations narrowly respond to a substantial governmental interest.

E.

The remaining requirements in the Denton County order for issuing, suspending, or revoking licenses resemble those in the

11

FW/PBS ordinance, which survived constitutional challenge. See id. at 1305-06. These procedures, like those in FW/PBS, can be objectively measured and rest on adequate factual bases either obvious by their terms or ascertainable by reference to other sources of law. See id. at 1306.

IV.

Denton County argues that the district court abused its discretion by finding that TK's was entitled to attorney's fees. See United States v. Mississippi, 921 F.2d 604, 609 (5th Cir. 1991). To receive attorney's fees, a plaintiff must be a prevailing party, that is, the plaintiff must succeed on a significant issue that achieves some of the benefit the plaintiff sought in bringing suit. Farrar v. Hobby, 113 S.Ct. 566, 572 (1992). A prevailing party must effect change in the legal relationship between plaintiff and defendant. Id. at 572-73.

TK's has succeeded on significant issues and has altered its legal relationship to the County. The district court invalidated licensure requirements for stockholders, limited partners, equity holders, and property owners associated with adult businesses. As well, the court invalidated the notice requirement in regard to property owners in close proximity to proposed adult businesses. We have, in turn, insisted on a status quo provision. These holdings materially alter the relationship of TK's to the county.

Denton County urges that TK's has not applied for a license, so the invalidation of any part of the order has not altered any legal relationship. This ignores the reality that TK's must apply

12

for a license to continue operation.  After the trial court's and this court's judgment, however, TK's must meet fewer requirements.  TK's lawsuit has altered the relevant legal regime.

In Rhodes v. Stewart, 488 U.S. 1 (1988) (per curiam), the Court reversed an attorney's fees award after a successful lawsuit to modify prison policies because one plaintiff had died and the other had been released.  It found that a victory "could not have in any way benefited either plaintiff."  Id. at 4.  Similarly, in Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782 (1989), the Court invalidated as vague a school regulation requiring that meetings during nonschool hours be conducted only with prior approval of the principal.  The court suggested that this finding alone would not support prevailing party status without "evidence that the plaintiffs were ever refused permission to use school premises during nonschool hours."  Id. at 792.

In Rhodes, the plaintiffs stood little chance of benefiting from the changed policy.  They would do so only if they returned to prison.  That chance was too speculative for the surviving plaintiff and nonexistent for the dead one.  As a result, the lawsuit did not materially alter the legal relationship between the parties.  A similar rationale explains Texas State Teachers, in which the plaintiffs failed to show that the principal had ever withheld permission for a meeting.  As the plaintiffs may have been free to meet regardless of their suit, it was uncertain whether success on the merits would alter any legal relationship.

13

In contrast to the plaintiffs in Rhodes and Texas State Teachers, T.K.'s faces certain regulation. First, TK's must seek a license to continue operation. The original order, partially invalidated by the district court, would have required TK's to seek licensure of stockholders, limited partners, equity holders, and certain property owners, and to notify certain neighbors at its business location. Unlike the plaintiffs in Rhodes, TK's would have been subject to these unconstitutional requirements with virtual certainty.

Second, the requirements that TK's seek licenses for certain persons and notify certain neighbors were not vague or optional, but were prerequisites for operation. These invalidated regulations did not resemble the school rule in Texas State Teachers because, unlike the principal's unstructured decisionmaking process, they were neither indefinite by their terms nor discretionary in their application. TK's must meet these requirements to remain open.

Denton County cites LaGrange Trading Co. v. Broussard, No. 90-2306, 1993 U.S. Dist. LEXIS 7281 (E.D. La. May 25, 1993), in which an adult bookstore challenged a zoning ordinance to remain at its present location. The court upheld most of the ordinance, but invalidated a special permit requirement. From this partial victory, the plaintiff sought attorney's fees. The court denied the request because the remaining provisions would require the business to move anyway. Id. at *16. Unlike the plaintiff in that case, TK's benefits from its lawsuit.

14

The district court entertained a request by Michael Gross for $22,487.50 in attorney's fees, but reduced the actual award to $7,500. Denton County argues that the $7,500 is unreasonably high given the degree of TK's success. In particular, the County notes that TK's asserted 72 constitutional challenges to the order, but prevailed on only 5 of them, a 7% success rate, which might suggest that $7,500 of the $22,487.50, or 33% of the requested fees, is too generous. TK's counsel was able and the County's counting fails to capture the success of this suit. We do not think so, but even if the award is generous, it is not an abuse of discretion.

We affirm the district court's carefully crafted decree in virtually all respects. We remand to the district court with instruction to enter judgment with the additional declaration that until the order of the Director of Public Works becomes final, an applicant for a license in business on the effective date of the Order cannot otherwise be regulated by the Order.

AFFIRMED in part, VACATED and REMANDED in part.